GEORGE V. CORSIGLIA *vs.* JOHN H. FRENCH & another.

Franklin.     September 20, 1933. — October 24, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & DONAHUE, JJ.

*Evidence,* Of damage.   *Damages,* In tort, Nominal.   *Conversion.*

At the trial of an action of tort for conversion of a boiler which the plaintiff, a subcontractor, had installed as part of the heating plant of a building and of which he still had control, there was evidence that the defendant, the contractor constructing the building, left the boiler unattended during a certain night in violation of an agreement between him and the plaintiff that he should not do so, whereby it became overheated and a number of its sections became cracked; and that the plaintiff immediately took charge of the situation and proceeded to replace the damaged sections, and completed his contract with the defendant. The only evidence as to damages was testimony by the plaintiff, who on direct examination stated that the cost of repairing the boiler was about $1,500, but on cross-examination stated that he did not know how many sections were damaged; that he actually paid less than $1,200 for the new sections, but could not say "off hand"

how much and was not willing to produce the invoices to him therefor unless ordered to do so by the trial judge; and that the $1,500 included the cost of the new sections at $1,200, their retail selling price, the cost of labor to install them and a portion of his overhead expenses. This court, assuming that the boiler was property which was susceptible of conversion and that the defendant had converted it by leaving it unattended in breach of his agreement with the plaintiff, *held*, that there was no evidence from which the jury could determine the measure of the plaintiff's damages, namely, the market value of the boiler at the time of its alleged conversion less its market value at the time when the plaintiff voluntarily retook possession of it, and that the plaintiff was not entitled to more than nominal damages.

TORT OR CONTRACT. Writ dated January 29, 1931.

The plaintiff's declaration was as follows: "Now comes the plaintiff in the above entitled action and says that he was the owner of a boiler which he had, by contract, installed in the boiler room of the Stoneleigh Prospect School in said Greenfield; that, while . . . owner of said boiler and before actually turning same over to the owners of the premises, he, at the especial request of the defendant[s], . . . suffered them to use the same; that he allowed them so to use same under the promise by them that same should not be left during the night unattended; that, in violation of their said promise, the defendant[s] did negligently violate said promise which resulted in the complete destruction of same all to the great loss of the plaintiff."

The action was tried in the Superior Court before *W. A. Burns*, J. Material evidence, the judge's rulings and a portion of his charge to the jury are described in the opinion. There was a verdict for the plaintiff in the sum of $1. The judge denied a motion by the plaintiff for a new trial and reported the action for determination by this court.

In his brief before this court, the plaintiff stated that the action "is now an action of tort for conversion."

*H. J. Field*, for the plaintiff.

*J. T. Bartlett*, (*P. H. Ball* with him,) for the defendant.

PIERCE, J. The case comes before this court on report after a trial to a jury in the Superior Court. At the conclusion of the trial, at the request of the defendant the trial judge ruled "that there was no evidence upon which the jury could ascertain the amount of damage actually suffered

by the plaintiff, and instructed the jury that if they found liability the verdict for the plaintiff must be for nominal damages only, namely, $1. The plaintiff excepted to this ruling and to portions of the charge as hereinafter set out, and the jury returned a verdict for the plaintiff in the sum of $1."

The plaintiff filed a motion for a new trial on the grounds "1. That said verdict is against the law and evidence owing to the fact that the court misdirected the jury as to the rule of damages thereby causing it to return a verdict for the plaintiff in the inadequate sum of $1"; and "2. That it appears by such verdict, justice has not been done to the plaintiff." This motion was denied and the plaintiff "seasonably filed his exceptions thereto, but failed to file, within the time required by law, his exceptions to . . . [the] ruling on damages made at the time of the trial." At the request of the plaintiff the trial judge reserved the case for report to the Supreme Judicial Court of "all the material evidence on the questions herewith submitted, namely (1) the ruling on the evidence of, and the charge as to, damages, and (2) the ruling denying a motion for a new trial." Preliminary to a statement of the material facts reported, it is to be noted that the writ summoned the defendant to answer unto the plaintiff in an "action of tort or contract," and further noted that the plaintiff stated at the hearing before this court that he relied on the action of tort only. We shall consider the exceptions on the footing that the action is for conversion, as stated in the plaintiff's brief.

The material facts as they appear in the report are in substance as follows: The defendant had entered into a contract to erect school buildings upon land in Greenfield, Massachusetts. The plaintiff, a heating contractor and plumber, doing business in Greenfield, had entered into a subcontract with the defendant contractor for installation of the heating plant in the school building. Evidence for the plaintiff warranted the jury in finding that on September 18, 1930, after the boiler, pipes and most of the radiators had been installed, but before the installation of the heating

plant had been entirely completed and before it had been accepted by the architect and actually turned over to the owners, and while the plaintiff still had control of the heating plant, a duly authorized agent of the defendant approached the plaintiff and requested that a fire be lighted in the boiler for the purpose of heating the building in order to dry out the plaster; that the plaintiff consented upon the express condition that there should be kept an attendant constantly with the boiler while the fire was burning; that the defendant through his duly authorized agent agreed to keep an attendant with the boiler and the plaintiff had the boiler connected with the chimney and, on the evening of September 18, the plaintiff's employees "fired up the boiler," stayed with it a while to see that it was working all right, and then left it in the care of a man paid to look after it by the defendant; that the man who was left by the defendant with the boiler did not remain with it all night and when he returned to the building on the following morning it was found that the water, due to foaming, had left the water jacket of the boiler and had gone into the pipes; that the boiler itself had become overheated and a number of its sections had cracked; that the boiler contained twenty-eight sections most of which were cracked and had to be replaced, but that certain of the important sections were not damaged; that the plaintiff, upon being notified of what had occurred, immediately took charge of the situation and proceeded to replace the damaged parts, and actually did complete his contract with the defendant so that the heating apparatus was accepted by the architect. He testified that the cost of repairing was $1,500 and some odd dollars for the boiler and labor.

Under cross-examination the plaintiff testified, in substance, that he bought the boiler that was burned of H. B. Smith Boiler Company; that he paid less than "twelve hundred and something" dollars for new sections and labor to have them put in; that the $1,500 included the retail price, $1,200, the labor he had to pay for putting them in, and "the price of . . . [his] overhead, what's going on every day." He further testified, in substance, that he was

not in business for his health; that he charged a profit on any goods that he sold; that he put in the bill to the defendant "twelve hundred and some odd dollars," the sale price of them; that he bought them cheaper than that; that the cost to him was the price he had to pay for new sections and labor to have them put in, but there was more damage to him than that. He further testified that the boiler had something like twenty-eight sections, he had never counted them and did not know how many sections were damaged; that parts of them were damaged and he had to buy new sections; that he had never examined the bill for them; that he had paid for having them put in; that he "can't tell off hand" how much he had to pay for them; that the extra cost to him over the price he paid for them was the "price of my overhead, what's going on every day" and that he charged it to the defendant as a part of the $1,500; that he was not willing to get his bills from H. B. Smith Company and bring them into court and show how much he paid for the sections unless the judge ordered him to do so; that he is suing for another boiler, that is, the parts that were replaced, and for the retail price of them, not for the actual cost in dollars and cents to replace them.

The material parts of the judge's charge in respect to the measure of damages, in substance, were: "Now, I take it in this case, Mr. Foreman and Gentlemen, that the measure of damages would be, if we had any evidence on it, if you should say there is liability, the difference between the amount that it would have cost Corsiglia to complete his contract had the damage to the boiler not occurred and the amount that it actually did cost him to complete his contract after the damage to the boiler, and to put that . . . in a more practical way, as a practical matter the measure of damages would be what it cost him, there being evidence here . . . that he didn't have to have an all new boiler, but nevertheless he did have to have some new sections . . . it would be the replacement cost . . . . That is, what did Mr. Corsiglia have to pay for those new sections and what did he have to pay the laborer for putting

them in, that is, to get him back into the same position that he would be as far as the boiler was concerned before it happened. How much was he set back, to drop into the vernacular. And . . . if paying for sections and the freight on them, if he had to pay the freight on them, and paying for the labor to put them in is the amount . . . that he was damaged then that would be the amount that he would be entitled to recover in his action, and we have no evidence as to what that amount. is and you are not allowed to guess at it, and you are not allowed under the situation to scale it down under these instructions which I have given you to $1,500 or bring it up to $1,500 or leave it right at $1,500, and so . . . I am going to instruct you that as a matter of law, there being no evidence here to the damage he suffered, the amount which is reasonable compensation for the damage that he suffered if he suffered it because of anything that this defendant did, if there is liability here, there being no evidence as to actual damage, you will return a verdict of $1, nominal damages as the law says."

Assuming, without decision, that the boiler had not by annexation and incorporation become real estate, and that it was personal property of a nature that could be converted, and that the violation of the agreement not to leave the boiler unattended during the night gave rise to an action of conversion, we think the instruction of the judge to the jury that "you will return a verdict of $1, nominal damages" was right. On the contention of the plaintiff, that a violation of the negative agreement not to leave the boiler unattended gave rise to an action of tort in the nature of conversion, if damage resulted therefrom to the boiler, considered as a unit, the burden of proof was upon the plaintiff to establish the fair market value of the boiler at the time and place it was when converted, possibly its fair market value to the extent it was installed. *E. Kronman, Inc.* v. *Bunn Bros. Inc.* 265 Mass. 549, 553–554. The plaintiff, however, "immediately took charge of the situation and proceeded . . . to replace the damaged parts." The measure of damages for the conversion then

became the market value, as described, less the market value at the time the possession of the boiler was voluntarily retaken. *Lucas* v. *Trumbull,* 15 Gray, 306. *Jackson* v. *Innes,* 231 Mass. 558, 560. In the case at bar no evidence of the fair market value of the boiler when it was converted or when it was recovered back was offered by the plaintiff, although he was asked by counsel for the defendant so to do. The jury could not be expected to have knowledge of the value of the boiler at the time of the conversion or of its value with the injured sections. Any determination of value on their part could have been no more than speculation. Had the plaintiff offered pertinent evidence they presumably could have found what would be the cost of replacement of the injured sections, and from that evidence could have found the damage to the plaintiff. As there was no evidence to establish the difference in the value of the boiler before and after the injury to the sections, the ruling of the judge was right. There was no error in the refusal to grant a new trial on reasons put by the plaintiff therefor.

*Exceptions overruled.*