PASQUALINA CASTRO & another *vs.* JOSEPH LINCHITZ & others.

Suffolk.    May 18, 1936. — May 29, 1937.

Present: CROSBY, PIERCE, DONAHUE, LUMMUS, & QUA, JJ.

*Mortgage,* Of personal property: foreclosure. *Damages,* For tort. *Value.*

Findings that a first mortgagee of personal property, knowing the existence of a second mortgage and that the second mortgagee desired and was able to protect his interest, after a small breach of the first mortgage sold the property to himself at a foreclosure sale for an inadequate price without giving notice of the sale to anyone excepting by telephone to the mortgagor fifteen minutes before the sale, although the mortgage required three days' notice in writing, and that the second mortgagee did not know of the sale, warranted a conclusion that the sale was in violation of the duty of good faith and reasonable care owed by the first mortgagee to the second mortgagee.

A second mortgagee of personal property injured by a fraudulent foreclosure of the first mortgage may be awarded damages against the first mortgagee where, because the property has been sold to an innocent purchaser, the foreclosure cannot be set aside; and such damages should be assessed as in an action for conversion.

The damage to a second mortgagee of restaurant equipment caused by the first mortgagee's wrongful execution of his power of sale, if a purchaser would not have the right to use the property on the premises where it was located at the time of the foreclosure, was the fair market value of the property for removal from the premises at that time less the value of the first mortgagee's lien.

A finding of the value, at the time of a sale in foreclosure of a mortgage of personal property of the mortgagor, a lessee of a restaurant, which was based on an assumption that the purchaser as of right could use it in that restaurant, was erroneous in the absence of evidence as to the mortgagor's lease.

BILL IN EQUITY, filed in the Superior Court on August 9, 1934, and afterwards amended.

A master's report was confirmed.  By order of *Baker*, J., a final decree was entered from which the defendant National Restaurant Equipment Co., Inc., appealed.

*F. L. Kozol*, for the defendant National Restaurant Equipment Co., Inc.

*W. F. Kane*, for the plaintiffs.

DONAHUE, J.  The plaintiff Pasqualina Castro held a second mortgage upon certain fixtures, furniture and equipment in a restaurant.  Her husband is also named as a party plaintiff but he had no beneficial interest in the mortgage, and where the word plaintiff is hereinafter used it will refer to Mrs. Castro.  Among other relief sought by this bill in equity is the setting aside of a foreclosure sale under a first mortgage, including the same property, which was held by the National Restaurant Equipment Co., Inc., hereinafter referred to as the defendant.  The case was heard in the Superior Court on a master's report and a decree was entered for the plaintiff.

The plaintiff and one Bruno, who is named in the bill as a party defendant, in January, 1934, formed a copartnership and for a short time conducted a restaurant, all the money advanced being furnished by the plaintiff.  She provided more than $4,800 to the business of the copartnership.  Certain of the personal property installed in the restaurant was purchased from the defendant for $3,500 on a contract of conditional sale, the sum of $1,875 being paid in cash by the plaintiff and the balance being represented by a series of notes of $38.58 each, payable on successive weeks.

Serious disagreements arose between the partners and the venture was not a success.  Each finally consulted an attorney and on May 7, 1934, a written agreement was entered into, by the terms of which the plaintiff agreed to sell to Bruno all her title and interest in the partnership business and property for the sum of $4,800 to be paid by Bruno's note for that amount with interest, payable in monthly instalments of $75 each for eighteen months and thereafter in monthly instalments of $150 each, said note to be secured by a second mortgage.  The agreement recited that some of the personal property in the restaurant had been purchased

from the defendant on a contract of conditional sale and provided that Bruno would procure from the defendant a release of the plaintiff from her obligation under the contract of conditional sale and that the mortgage to the plaintiff would be junior to a mortgage to be given by Bruno to the defendant for the amount due on the contract of conditional sale.

A bill of sale in accordance with the agreement was given by the plaintiff to Bruno. The terms of the agreement were communicated to the defendant. It agreed to release the plaintiff from her obligation under the contract of conditional sale but insisted that the mortgage given to it by Bruno should include not only the property sold by it to the partnership but also "all other fixtures and merchandise." The plaintiff had purchased and installed in the restaurant other equipment for which she paid $1,600. A mortgage dated May 19, 1934, given by Bruno to the defendant included all the partnership property. The mortgage secured a note for $1,968 payable in weekly instalments of $24.60 beginning May 25, although the amount then unpaid on the contract of conditional sale was only $1,388.88. The mortgage given to the plaintiff recited that it was subject to the defendant's mortgage, but the amount secured by the first mortgage was not stated in the plaintiff's mortgage and was not known to the plaintiff.

The defendant, on July 20, 1934, purported to foreclose its mortgage by the exercise of the power of sale therein contained. The defendant in thus foreclosing the mortgage owed to the plaintiff as holder of a second mortgage the same obligation of good faith and reasonable care that it owed to the mortgagor. *Sandler* v. *Silk*, 292 Mass. 493, and cases cited. The facts found by the master warrant the conclusion that the defendant in foreclosing its mortgage violated the obligation it owed to the plaintiff.

The defendant's mortgage provided that it might be foreclosed by a sale upon three days' notice in writing. See *Loza* v. *Osmola*, 279 Mass. 220. It gave no such notice. It gave written notice to no one. The only notice given by it to anybody was by a telephone message to the mortgagor

fifteen minutes before the sale was held. The only persons present at the sale were the mortgagor, the defendant's president who was its general manager, its attorney who was also an auctioneer and acted in that capacity at the sale, and two men who came with the defendant's president and attorney to the restaurant. Each of these men made a bid. The defendant's president made the third and final bid of $1,200 and the auctioneer announced that the defendant had purchased the property. The plaintiff had no knowledge that the defendant's mortgage was to be foreclosed and no knowledge that there had been a foreclosure sale until August 4, 1934.

The defendant was aware of the existence of the plaintiff's mortgage and the circumstances under which it was given. It knew that the plaintiff desired, and was able, to protect her interest in the property. Several weeks before the sale, at a time when there was a breach of the conditions of the mortgage of the plaintiff but no breach of the conditions of the defendant's mortgage, the defendant's president told the mortgagor to take no written receipts for payments of weekly instalments on the first mortgage, so that the defendant might have apparent breaches of the mortgage on which to base a foreclosure and thus to wipe out the interest of the plaintiff. At the time of the sale the only default under the defendant's mortgage was the failure of the mortgagor to pay one weekly instalment of $24.60. The sale was so planned and conducted that no one except agents of the defendant was present to bid and the defendant could become the purchaser of property some of which it sold six months before for $3,500 at whatever price it saw fit. The price of $1,200 for which the defendant obtained the property was inadequate. While mere inadequacy of the price received does not make a foreclosure sale invalid, it is a circumstance to be considered in determining whether a foreclosing mortgagee lived up to his obligation of good faith and reasonable care. *Sandler* v. *Silk*, 292 Mass. 493, 497. We think that the facts here recited, taken together, without considering the matter of any agreement with reference to foreclosure made by the parties, warrant the con-

clusion that the defendant in the conduct of the sale violated the obligation of good faith and diligence which it owed to the plaintiff. It is not essential for a finding of bad faith and lack of reasonable care to show that a foreclosing mortgagee promised to give a junior mortgagee notice of a foreclosure sale. *Clapp* v. *Gardiner*, 237 Mass. 187. *Bon* v. *Graves*, 216 Mass. 440. *Briggs* v. *Briggs*, 135 Mass. 306. *Thompson* v. *Heywood*, 129 Mass. 401. *Hood* v. *Adams*, 124 Mass. 481. *Drinan* v. *Nichols*, 115 Mass. 353.

Five weeks before the foreclosure sale, at a time when there was a breach of the conditions of the plaintiff's mortgage but no breach of the conditions of the defendant's mortgage, its president suggested to the plaintiff that both give the mortgagor three or four months to better his financial condition, that both agree not to "take any action" within such period and that the defendant would agree to "take no action at any time without giving her two or three weeks notice." The plaintiff stated that she agreed. Soon afterwards, the plaintiff, learning that the defendant was continuing to receive instalment payments under its mortgage while no payment was made of instalments under her mortgage, instructed her attorney to proceed to enforce collection under her mortgage, and the attorney gave notice of a foreclosure sale. The defendant's president at once communicated with the plaintiff's attorney and stated that the mortgagor could make a success of his business "if we let him alone" and that the defendant "will not trouble him if he does default." The foreclosure sale contemplated by the plaintiff was then abandoned. For the purposes of this decision we assume, in accordance with the defendant's contention, that giving notice of a foreclosure sale under the plaintiff's mortgage was a breach of the agreement which had been made and that the defendant was no longer bound, by reason of any contract with the plaintiff, to give notice to the plaintiff of a foreclosure sale under its mortgage. This, however, did not free it from the obligation which the law put upon it to use good faith and reasonable diligence with respect to the rights of the plaintiff in the foreclosure of its mortgage.

After the foreclosure sale on July 20, the defendant permitted the mortgagor to conduct the restaurant for about a week and then closed the place and sought a customer. On August 3 the lessors of the premises gave the defendant notice of an entry to terminate the lease. On the following day the lessors made an agreement with the defendant Linchitz, who occupied a store in the vicinity, to give him a one year lease of the premises, and two days later delivered to him such a lease. On the next day the defendant sold and delivered to Linchitz for the price of $1,675 the property purchased at the foreclosure sale. The plaintiff contended before the master that Linchitz made the purchase with notice of her claim. The master, however, found that he did not have such notice when he took title or knowledge of facts sufficient to put him on inquiry as to her claim. The plaintiff assented to a decree dismissing the bill as against Linchitz and does not now ask to have the foreclosure sale set aside. She here seeks damages under a prayer in the bill for that form of relief. See *Newburyport Institution for Savings* v. *Puffer*, 201 Mass. 41, 47.

The master found that, at the time of the foreclosure sale, the fair value of the property covered by both mortgages "for use in place on the premises" was $3,500, and its fair value "for the purpose of removal and use elsewhere" was $1,675. He found that, when the first mortgage was given, the amount then unpaid under the contract of conditional sale was $1,388.88, and that the amount unpaid on the contract of conditional sale at the time of the foreclosure was $1,216.68. He reached this result by deducting from the amount of $1,388.88 the sum of $172.20 which was the total amount of instalments paid under the defendant's mortgage from its date to the date of the foreclosure sale. He also found that $1,216.68, as between the plaintiff and the defendant, was the amount due on the mortgage; that the plaintiff was able and willing to pay it for a discharge of the defendant's mortgage; and that the defendant knew of her ability and willingness to make such payment.

The master found the amount of damage to the plaintiff as the result of the conduct of the defendant to be $2,783.32 which was made up of the sum of $500 found by him to be the amount of damages suffered by the plaintiff with respect to a liquor license granted for the premises and the sum of $2,283.32 which he found to be the damage to the plaintiff's interest in the personal property covered by the mortgages. The figure $2,283.32 was reached by deducting from the amount of $3,500, which he found to be the fair value of the personal property for use on the premises where it was located, the amount of $1,216.68, which he found to be the value of the defendant's lien on the property. After the filing of the master's report the plaintiff filed in court a stipulation waiving the damages of $500 assessed with respect to the liquor license.

The final decree ordered the defendant National Restaurant Equipment Co., Inc., to pay to the plaintiffs $2,283.32 with interest and ordered the defendant Bruno to pay to the plaintiffs the amount of his note, $4,800 with interest. There was error in the computation and award of damages to be paid by the defendant National Restaurant Equipment Co., Inc.

The agreement of dissolution of the copartnership between the plaintiff and Bruno, the terms of which were known to the defendant when its mortgage was taken, provided that the plaintiff's mortgage would be subject to a mortgage to the defendant "for the amount due to it under the conditional sales contract." It does not appear that the partners owed anything to the defendant when the mortgages were made except the amounts represented by the series of notes given in connection with the contract of conditional sale, or that the plaintiff or Bruno thereafter incurred any additional indebtedness to the defendant. We think there was no error in the conclusion of the master that as between the plaintiff and the defendant the amount of $1,216.68 represented the value of the defendant's lien on the property at the time of the foreclosure sale.

It has been said that an action for the wrongful execution of the power of sale in a mortgage resembles an action

for conversion. *Rogers* v. *Barnes*, 169 Mass. 179, 185. We think that damages should here be determined as in an action for conversion, *E. Kronman, Inc.* v. *Bunn Bros. Inc.* 258 Mass. 562, 568, and that the market value of the property is to be determined as of the time and place of the sale. *E. Kronman, Inc.* v. *Bunn Bros. Inc.* 265 Mass. 549, 554. *Corsiglia* v. *French*, 284 Mass. 211, 216. But the master went further in his computation of damages and took as an element entering into the value of the property its "fair value . . . for use in place on the premises" and found that value to be $3,500.*

There may be a great difference between the market value of fittings and equipment in a restaurant if a purchaser of them has the right to use them in that particular place, and the market value if the purchaser has no such right. Sedg. Damages (9th ed.) § 254a. From the facts found, it does not appear that a purchaser at foreclosure sale under either mortgage would have the right to use the property in question on the premises where it was located at the time of the foreclosure. It was found that "the lessors of the premises" in August gave the defendant notice of entry to terminate the lease and ordering the removal of the property, but the date of the lease, its terms, the persons who were lessees, and whether or not the lease was assignable do not appear. It cannot here be assumed that a purchaser of the property could as of right use it in the premises of the restaurant. The finding of its value on the basis of such an assumption was therefore error.

The master made an alternative finding of the value of the property covered by the mortgages "for the purpose of removal and use elsewhere." This we take to mean the fair market value. On the facts appearing this was the

---

* The master's only finding as to value of the property sold in foreclosure was as follows: "I find that on July 20, 1934, the fair value of the property covered by both mortgages for use in place on the premises was $3,500, and that the fair value of the same property for the purpose of removal and use elsewhere was $1,675, and that the fair value on that date of the liquor license, which was covered by the second mortgage and not by the first, was $500 for use on the premises or elsewhere." — REPORTER.

proper basis for determining the market value of the property. That value he found to be $1,675. The value here important was its value on the day of the foreclosure sale. There was evidence of what the property cost a few months before. The correct theory as to the basis of determining the market value was in this finding adopted by the master and we think the finding should stand. *Smith* v. *Lloyd*, 224 Mass. 173, 174. The damage suffered by the plaintiff was $458.32, the difference between $1,675, the value of the property, and $1,216.68, the value of the defendant's lien upon it.

The plaintiff's husband had no beneficial interest in the partnership or in the second mortgage and is not entitled to relief. The final decree is reversed and a final decree is to be entered ordering the defendant National Restaurant Equipment Co., Inc., to pay to the plaintiff Pasqualina Castro the sum of $458.32 with interest thereon from January 17, 1936, the date of filing the master's report; ordering the defendant Bruno to pay to Pasqualina Castro the sum of $4,800, the amount of his note, with interest thereon from May 8, 1934, the date of the note; and dismissing the bill without costs as to one Vermacchio who was named as a defendant but had no interest in the property.

*Ordered accordingly.*