**BOETTGER, Appellant, v BAY CITY SHOVELS, INC., Appellee.**

Ohio Appeals, 1st District, Hamilton County.

No. 6204. Decided February 8, 1943.

Walter K. Sibbald, Cincinnati, and Andrew O. Haefner, Cincinnati, for appellant.

Galvin, Tracy, Crawford, Geoghegan & Levy, Cincinnati, for appellee.

## OPINION

By MATTHEWS, P. J.

This is an action by a mortgagor against a mortgagee for conversion of a power shovel and trailer. At the close of the evidence the trial court sustained the defendant's motion for an instructed verdict. The plaintiff's motion for a new trial was overruled and judgment entered on the verdict. This appeal is from that judgment.

Originally, the plaintiff entered into a conditional sales contract for the purchase of this property. The contract price was $10,525.00, upon which the plaintiff was given a credit of $3,000.00, as the agreed value of a power shovel which he transferred to the defendant at the time. He agreed to pay $525.00 in cash, and agreed to and eventually gave 23 notes for $300.00 each payable in consecutive months, commencing July 15th, 1939, and one note for $100.00, as the final payment. This conditional sales contract was dated May 23rd, 1939.

The plaintiff did not make the first payment as agreed and defaulted in payment of all the notes that matured before April 1st, 1940. Up to that time he had only paid $200.00 and was in default to the extent of more than $3000.00. During this period the plaintiff had assigned to the defendant the payments that would accrue to him upon the performance of certain work under a contract with the State Highways Department, then had attempted to revoke this assignment and made a second assignment to another creditor, with whom he seemed to have had more intimate business relations and from whom he expected future favors, and when the defendant was told by the State Highways Department of this attempt, the plaintiff was induced by his attorney and the defendant to withdraw the revocation and defendant received from the State Highways Department about $2,500.00, which was applied as a credit upon the plaintiff's debt.

However, after applying this credit, the plaintiff was in default. Several of the notes were overdue and unpaid. In this situation, the defendant demanded and the plaintiff agreed to and did substitute a new series of notes for $385 each, for the balance secured by a chattel mortgage on the power shovel and trailer. The first of this series of notes did not mature for 60 days after its execution. At the time of the execution of this chattel mortgage the plaintiff paid $300.00 on the debt, but defaulted in the payment of the first and all subsequent notes secured by the mortgage. The $300.00 which was paid at that time was obtained on an assignment of benefits under another contract with State Highways Department for work to be done on a highway near Columbus, Ohio.

This record furnishes abundant basis for defendant's conclusion that it could not rely on the plaintiff's promises and representations. There was an undisclosed mortgage for more than $300.00 upon the shovel, for which the plaintiff was given a credit of $3000.00 on the purchase price. The defendant was obliged to pay this mortgage debt in order to clear its title. There were several other incidents uncontradicted that would justify the portrayal of the plaintiff as other than an honest debtor, unable to pay because of disappointed expectations. We mention this as reflecting upon the defendant's motive in taking possession of the power shovel where it had been left in November, 1940 by the plaintiff on the side of the highway on which he had been working. There is no doubt that the circumstances justified the defendant in exercising its rights under this provision of the chattel mortgage:

"Mortgagor agrees to pay the said promissory notes above referred to and agrees that if default shall be made in the payment of any of the installments of principal or interest thereof, or any of the covenants expressed herein, or whenever the mortgagee shall deem the debt insecure, the entire balance of the purchase price and interest shall, at the option of the mortgagee, without notice to mortgagor, become immediately due and payable and the mortgagee shall thereupon have the right to take immediate possession of said chattels and for that purpose may, with or without legal process, enter upon or into the premises where said chattels are located and take possession thereof and remove the same to such other place as it may deem safe and convenient at the risk and expense of mortgagor **and reserving the right to bid upon such sale,** to sell and dispose of said chattels, or any part thereof, either where mortgagor's place of business is located or at such other place to which said chattels may have been removed, either at public or private sale, in bulk or in parcels and if at public sale, after giving five days notice by written notice to be posted in three public places in the city, village or township in which chattels may be offered for sale, and out of the moneys received from such sale, to pay the expense of such seizure, holding, removal and sale, or sums then unpaid, both for principal and interest upon said notes, and the balance of surplus money, if any, shall be paid to mortgagor."

The defendant immediately notified the plaintiff and took possession of the trailer which was in Hamilton county. The defendant's agent conferred with the plaintiff, discussed the situation, demanded payment and the plaintiff did nothing, although he had at least two weeks in which to make payment.

Finally, the defendant through its attorneys arranged to sell the power shovel in Columbus and the trailer in Cincinnati. It posted the notices in accordance with the terms of the chattel mortgage and in addition sent a registered letter to the plaintiff

notifying him of its action, but for some reason this letter was unclaimed and returned to the sender. However, the plaintiff had actual notice of the time and place of the sales and attended both in company with his attorney and his creditor to whom he had made the second assignment of the benefits under the State Highway Department contract. They sought to persuade the defendant to accept $770.00 on account and postpone the sale which the defendant refused to do. The plaintiff then, instead of arranging to pay or to attend the sale, spent his time seeking advice as to whether he could enjoin the sale. The sale took place and the defendant bought the shovel for $4300.00. The next day the sale of the trailer took place. The plaintiff was present, his attorney cried the sale and the defendant bought the trailer for $500.00. They then repaired to an attorney's office where several hours were spent in negotiations in which the plaintiff and his associates endeavored to induce the defendant to accept less for the shovel and trailer than the unpaid balance and less than the amount it had bid at the sale. While there is some dispute as to the exact amount of the unpaid balance on the mortgage there is no substantial dispute that the defendant was willing then to relinquish all right to the shovel and trailer in consideration of the payment of the unpaid balance on the mortgage and the reasonable expense to which it had been put in taking care of the property and in making the sales, and finally agreed to leave the matter pending a few days to enable the plaintiff to determine whether he could or would meet the defendant's terms. The defendant did allow the matter to pend for a few days and then notified the plaintiff that it had arranged to dispose of the shovel. Thereupon, for the first time, the plaintiff offered an amount equal to the unpaid balance and the defendant informed him it was too late.

It was argued orally and in brief that at the time of the purchase of the shovel at the public sale by the defendant it then had an arrangement with or knew of the purchaser to whom it subsequently sold the shovel for $6,000.00. There is no evidence from which a reasonable inference can be drawn to support this argument. The record shows that the defendant after repairing the shovel leased it for a rental of $200.00 per month with privilege of purchase for $6000.00, and that this privilege was exercised. The result was that after paying a commission for making the sale and the expenses of repairs it received less than the balance that would have been due it under the mortgage.

It is on this incident of the resale that the plaintiff predicates his claim of bad faith. We find no evidence of bad faith in the record. All the evidence indicates that the only purpose of the defendant was to secure payment of the unpaid balance, without any purpose to make a profit at the plaintiff's expense, and it gave the plaintiff unusual opportunities to protect himself.

As to the trailer, the evidence is that the defendant still has it, and that it is in such condition that its only value is as scrap metal.

The plaintiff testified that the shovel and trailer were worth $8000.0u and one of his witnesses said it was worth $9000.00. Other witnesses testified that power shovels and trailers deteriorate rapidly under the use for which they are intended and that the defendant salvaged all of the value from this shovel and trailer.

Now, do these facts present an issue for submission to the jury? The trial court thought not and we agree.

The action is for conversion. Both plaintiff and defendant had rights in the property alleged to have been converted by the defendant. The plaintiff had authorized a sale under certain circumstances, and a sale conducted in accordance with the authority conferred could not be a wrong to the authorizing plaintiff. The plaintiff was in default, the defendant was justified in taking possession, it gave the notices required, it conducted the sale and became the purchaser, all in accordance with the terms of the mortgage. But the plaintiff says that the sale was for less than the fair value of the property and that this fact makes the entire proceeding wrongful and a conversion of his property by the defendant.

There is no doubt that the law requires that a mortgagee in exercising a power of sale should observe strictly the conditions imposed by the mortgage and any substantial departure therefrom will render him liable to the mortgagor for the damage resulting. And in addition to the express conditions and limitations there is always present the implied limitation that the donee of a power will exercise good faith so that the express conditions and limitations will accomplish their purpose of protecting the interests of the donor of the power—the mortgagor in this case. He must not stifle competition. He must do nothing to chill the sale.

In 10 Am. Jur., 883, it is said: "If the sale is attacked, the burden is on the mortgagee to show that it was openly and fairly conducted and that the price paid was not so inadequate as to raise a presumption of bad faith, and it has been said that this is the most that can be required of him."

This shovel and trailer had been subjected to a year and one-half of rough usage. It could not be used without subjecting it to great strain and the evidence shows that it had suffered greatly from the use and needed repairs in many respects. The sale of such a machine for approximately half of the price of a new one certainly is not so inadequate as to raise an inference of bad faith. The plaintiff's own evidence shows that he did not so regard it at the time.

Reliance is placed on **Clark v Studebaker Co., 35 Oh Ap, 55,** by the plaintiff. But in that case, the mortgagor had no notice of the sale, which was a private sale, was not present, had no opportunity to bid, was engaged at the time in raising the balance of the debt, and was not given an opportunity to redeem. The mortgagor had

left the automobile for repairs and when she returned with the money to pay the mortgage was told that it had been sold for a little more than one-third of its purchase price six months before, and that she had no rights in the automobile and owed a substantial balance after being given credit for the amount for which the mortgagee said it had sold the automobile. It seems to us that the facts in that case show a clear abuse of the power of sale. The facts are in marked contrast to the facts in this case.

Counsel also relies on Castro v Linchitz et. 297 Mass., 381, 8 N. E. (2d), 744. That was an action by a second mortgagee against a first mortgagee. The court found that the first mortgagee owed the same duty to the second mortgagee as to the mortgagor to observe good faith and reasonable care and found as a matter of fact that a conspiracy existed between the mortgagor ana the first mortgagee to destroy the second mortgage, by the latter exercising a power of sale brought into operation by a collusive default of one weekly default of $24.00 upon an indebtedness of about $1400.00. No notice whatsoever was given to the second mortgagee, notwithstanding the first mortgagor's knowledge that the second mortgagee was able to and would protect her interests by paying the first mortgage. We think the facts sufficiently distinguish this case.

Our conclusion is that there is no substantial evidence of bad faith or of an abuse of the power of sale in any other respect, and that the trial court did not err in instructing a verdict for the defendant and in entering judgment thereon.

For these reasons, the judgment is affirmed.

ROSS, J., concurs.