SHAWMUT BANK, N.A. *vs.* ANN WAYMAN.

No. 91-P-1008.

Suffolk. December 8, 1992. - January 22, 1993.

Present: SMITH, FINE, & IRELAND, JJ.

*Guaranty. Bank. Loan. Negligence*, Standard of care. *Contract*, Implied covenant of good faith and fair dealing. *Estoppel.*

On appeal from a judgment for over $1,000,000 entered against the defendant based upon her personal guaranty of a commercial loan of $500,000 from the plaintiff bank to a corporation of which the defendant was, at one time, a principal, this court concluded that the defendant was liable for the full amount of the corporation's debt according to the terms of her guaranty of all of the corporation's obligations to the bank "now or hereafter owing or incurred" as the bank "in its sole discretion deems fit," where it was undisputed that the defendant understood the import of the guaranty when she signed it and, as a principal of the corporation at the time, benefited from the credit extended to the corporation, and where she was bound by the express terms of the guaranty waiving her right to require the bank to notify her of any disbursement of additional loan funds and to obtain her consent thereto. [23]

In the circumstances attending an ordinary commercial loan originally sought by a principal in the borrowing corporation, who willingly became a guarantor of any funds advanced thereafter to the corporation, the lender-bank was under no duty to the guarantor of the loan to exercise due care in dealing with the corporation or to protect the guarantor's interests when it approved additional loans to the corporation. [23-24]

In an action by a bank to enforce a guaranty of a commercial loan to a corporation of which the guarantor had been a principal, the guarantor, in opposing the bank's motion for summary judgment, made no showing that the bank's advancing of additional funds to the corporation without a reasonable investigation of the corporation's ability to repay the loan and without the guarantor's knowledge and assent had violated any duty of good faith it owed her in the circumstances. [24-26]

In the circumstances attending an ordinary commercial loan originally sought by a principal in the borrowing corporation, who willingly became a guarantor of any funds advanced to the corporation in the future, the lender-bank was not equitably estopped from enforcing the guaranty as a result of its advancing additional funds to the corporation without the guarantor's knowledge and assent. [26]

CIVIL ACTION commenced in the Superior Court Department on November 8, 1989.

The case was heard by *R. Malcolm Graham*, J., on a motion for summary judgment.

*Richard G. Pichette (Robert D. Ahearn* with him) for the defendant.

*Catherine E. Reuben* for the plaintiff.

FINE, J. The defendant, Ann Wayman, appeals from a judgment for over $1,000,000 entered against her based upon her personal guarantee of a commercial loan from the plaintiff, Shawmut Bank (Shawmut), to Arlanda International Corporation (Arlanda). We recite the essentially undisputed facts presented to the judge who allowed Shawmut's motion for summary judgment.

On December 2, 1987, when Arlanda was prospering as a distributor of computer hardware and software, Shawmut loaned it $500,000. Stephen and Ann Wayman, husband and wife at the time, were directors and active salaried employees of Arlanda, and each owned fifty percent of its stock. Stephen[1] was president and executed the loan in that capacity; Ann was vice president, treasurer, and clerk. While Ann, as treasurer, had general responsibility for Arlanda's financial affairs and business records, she and Stephen had an informal understanding that he would manage the company's finances.

The Shawmut loan was supported by numerous documents routine in such transactions including promissory notes, security agreements, and personal financial statements. The loan was conditioned on Shawmut's right to receive regular financial reports and to monitor Arlanda's performance. In addition, Stephen and Ann each signed an unconditional personal guaranty of all of Arlanda's obligations to Shawmut "now or hereafter owing or incurred," the guaranty to remain in effect until notification to the bank in writing of the intention to discontinue it. Each guaranty gave the bank the right to deal with Arlanda without notice to, or consent of,

---

[1]We refer to the parties by their first names not out of disrespect but to distinguish them from each other.

the guarantor, "in such manner as the bank in its sole discretion deems fit," and, in addition, provided as follows:

> "The Guarantor waives notice of acceptance hereof, notice of any action taken or omitted by the Bank in reliance hereon, and any requirement that the Bank be diligent or prompt in making demands hereunder, giving notice of any default by the Borrower or asserting any other right of the Bank hereunder. The Guarantor also irrevocably waives, to the fullest extent permitted by law, all defenses which at any time may be available in respect of the Guarantor's Obligations hereunder by virtue of any homestead exemption, statute of limitations, valuation, stay, moratorium law or other similar law now or hereafter in effect."

After April of 1988, the financial reports due the bank from Arlanda were not provided. By the end of 1988, the Waymans' marriage had deteriorated, and funds of Arlanda were being diverted improperly by Stephen. Without Ann's knowledge, Stephen commenced negotiations with Shawmut to increase Arlanda's loans. He provided false financial information which the bank made no effort to verify. Formal documentation for the new loan was prepared by the bank and a closing was tentatively scheduled, but additional funds were disbursed to Arlanda in January of 1989 without notice to Ann and without the closing having taken place or the supporting documents having been executed. The loan proceeds were misappropriated by Stephen. Shawmut has obtained default judgments against Arlanda, now bankrupt, and Stephen, who is now divorced from Ann, in the amount of $1,010,662.90.

The bank claims in this action that Ann is liable for the full amount of the judgment on the basis of her guaranty which she never terminated by notice to the bank. Ann, on the other hand, denies that she remains liable on the guaranty and seeks recovery from the bank for its allegedly wrongful conduct towards her. Addressing in his careful memorandum of decision some issues not previously dealt

with in appellate decisions in Massachusetts, in particular the extent of a bank's duty to deal with the guarantor of a commercial loan in good faith and with due care, the judge ruled in favor of the bank. We agree with the judge's conclusions and, therefore, affirm the judgment.

1. *The guaranty.* Putting aside for the moment the question whether there was a breach of duty by the bank to Ann, we conclude that she is liable for the full amount of Arlanda's debt according to the terms of the guaranty. She does not dispute that she understood the import of the guaranty when she signed it, and, as a principal of Arlanda, she benefited from the credit extended to that company. While ordinarily an increase in the amount of the debt without her knowledge or consent would have discharged her from further liability, see *Warren* v. *Lyons*, 152 Mass. 310 (1890); *Germania Fire Ins. Co.* v. *Lange*, 193 Mass. 67 (1906), she is bound by the express terms of the guaranty waiving her right to such notice and assent. See *Provident Co-op. Bank* v. *James Talcott, Inc.*, 358 Mass. 180, 192-193 (1970); *Merrimack Valley Natl. Bank* v. *Baird*, 372 Mass. 721, 725-726 (1977); *Federal Deposit Ins. Corp.* v. *Hill*, 13 Mass. App. Ct. 514, 518 (1982). In light of the terms of the guaranty, in particular the provision that the bank could deal with the borrower as it "in its sole discretion deems fit," there was no basis for any assumption on Ann's part that disbursement of new loan funds would be preceded by the same formality as the original loan.

2. *Negligence.* Ann claims, however, that she is not liable as guarantor of Arlanda's debt, and, indeed, that Shawmut is liable to her, because Shawmut violated its duty to exercise due care and failed to protect her interests when it approved the additional loans to Arlanda. The evidence raises an issue of fact as to inadequate lending practices and poor business judgment on the part of the bank; unquestionably, more effective monitoring of Arlanda, verification of financial information supplied by Stephen, communication with Ann, and insistence upon documentation for the additional loan, necessitating a vote by Arlanda's directors, would have avoided

the harm which has befallen Ann. We agree with the motion judge, however, that the issue of fact is not material because the bank owed Ann as guarantor no duty to exercise reasonable care.

To reach this conclusion, we need not rely on language in the guaranty, the clear import of which is a waiver of the right to rely on such negligence as a defense, even though such language would generally be enforceable. The weight of authority in jurisdictions which have ruled on the issue of the existence of a duty of care in such circumstances suggests that a bank is under *no* duty to the guarantor of a commercial loan to exercise due care in dealing with the borrower or determining whether to make the loan. See *Fordham* v. *Federal Deposit Ins. Corp.*, 130 B.R. 632, 646 (Bankr. D. Mass. 1991), and cases cited at 646-647.

The present case involves an ordinary commercial loan originally sought by a principal in the borrowing corporation, who willingly became a guarantor of any funds advanced to the corporation in the future. In that context, the guarantor could not reasonably have relied on the bank's judgment regarding the advisability of advancing the loans. Not only would it be inappropriate to place a duty of care on the bank in such circumstances, but the imposition of such a duty could have a severe adverse effect on commercial banking, the flow of credit to business, and the public generally.

A duty of care to Ann as guarantor would have existed if Shawmut had actively participated in, or exercised control over, Arlanda's business to such an extent that Shawmut and Arlanda were joint venturers or a fiduciary relationship existed. *Id.* at 648-649. There is no need for us to define in this case exactly what circumstances might create such a fiduciary relationship; it suffices to say that Shawmut's right to receive regular financial reports and monitor Arlanda's performance, and even to limit salaries paid to the Waymans, was not at all unusual in the context of a commercial loan and does not create a fiduciary relationship.

3. *Good faith.* Ann claims, alternatively, that the bank may not enforce the guaranty, and, indeed, is liable to her,

because it violated its duty to act in good faith towards her by improvidently advancing the additional funds to Arlanda without a reasonable investigation of its ability to repay the loan and without Ann's knowledge and assent. She points out, correctly, that under Massachusetts law, every contract contains an implied covenant of good faith. See *Fortune* v. *National Cash Register Co.*, 373 Mass. 96, 104 (1977); G. L. c. 106, § 1-203. In context, the duty of good faith would require that the bank be honest in its dealings with Ann as guarantor and that it not purposefully injure her right to obtain the benefits of the contract.

Although in Ann's guaranty she expressly waived all defenses with respect to her obligations as guarantor, we need not rely on that waiver to determine that she has no defense or independent cause of action on grounds of Shawmut's alleged bad faith. This is because no evidence was offered of the type properly considered for purposes of summary judgment of any misrepresentation or dishonest act on Shawmut's part or any design to deprive Ann of the benefits of her contract.

It is true that Shawmut failed to disclose information to Ann about Stephen's renewed loan negotiations and the additional loans to Arlanda. In her guaranty, however, she expressly waived the right to receive such information. Moreover, the bank had no reason to know that, as treasurer of Arlanda, Ann would be unaware of the new loan negotiations and the ensuing loan transactions. In the circumstances, therefore, nondisclosure of the information which would have been useful to Ann did not amount to dishonesty on the part of Shawmut. Nor is there evidence that the bank was on notice that Ann, as a fifty percent owner of Arlanda, would not derive any benefit from the additional loans sought on behalf of Arlanda. Shawmut has not been shown to have acted, therefore, to injure Ann's rights under her guaranty contract.

Shawmut could certainly have been more diligent in its monitoring and its lending decisions with respect to Arlanda. The right to monitor Arlanda was for its own benefit, however, not the guarantor's. In sum, if we assume a duty of

good faith to exist in the circumstances, there has been no showing of actions on Shawmut's part amounting to bad faith. See *Idaho First Natl. Bank* v. *Bliss Valley Foods, Inc.*, 121 Idaho 266, 287-288 (1991).

4. *Equitable estoppel.* Ann claims, finally, that the bank should be equitably estopped from enforcing the guaranty as a result of its unfair conduct. While she has certainly suffered a financial loss as a result of the failed loan, she is the victim primarily of Stephen's wrongdoing. As between Ann and the bank, which disbursed funds initially at her request and later at least partially in reliance on her guaranty, the equities favor the bank. Before the additional funds were disbursed, Ann was aware of Stephen's abusive behavior towards her and, as treasurer of Arlanda, she was in a position to know of Stephen's misuse of corporate funds. Yet, she neither conveyed the information to the bank; kept abreast of Arlanda's financial affairs, nor sought to protect her interests, as she easily could have, by terminating her guaranty.[2]

*Judgment affirmed.*

---

[2]Ann makes numerous additional arguments on appeal under separate headings, but our discussion disposes of the substance of all of them.