**FEDERAL DEPOSIT INSURANCE CORPORATION, as Liquidating Agent of The Central Savings Bank, Plaintiff,**

v.

**Arthur R. SMITH, Jr., Trustee and Robert R. White, Trustee, Semper Fidelis Realty Trust and Arthur R. Smith, Jr. and Robert R. White, Defendants.**

Civ. A. No. 92–10584–JLT.

United States District Court, D. Massachusetts.

March 7, 1994.

Richard L. Fox, Carragher, Fox & Lampert, PC, Chelmsford, MA, for Central Sav. Bank and F.D.I.C.

Raymond R. Coutoure, Office of Raymond R. Coutoure, North Reading, MA, for Arthur R. Smith, Jr., trustee.

Paul L. Tariot, Lowell, MA, for Robert R. White, trustee.

### MEMORANDUM

TAURO, Chief Judge.

The. Federal Deposit Insurance Corporation ("FDIC"), as liquidating agent of Central Savings Bank ("Central"), brings this action to recover a deficiency under a promissory note executed and delivered to Central by defendants Arthur R. Smith, Jr. and Robert R. White, both individually and as trustees for Semper Fidelis Realty Trust (the "Trust"). Defendants have asserted several affirmative defenses, generally alleging that Central failed to comply with the terms of its construction loan agreement, breached its duty of good faith and fair dealing, and breached its fiduciary duty.

Presently before the court is the FDIC's motion for summary judgment.

### I.

#### Background

Defendants, as trustees of the Trust, were owners of an office building located at 219 Central Street in Lowell, Massachusetts. On October 15, 1986, defendants, in their capacities as trustees, borrowed $1.5 million from Central to finance the conversion of the office building into residential and office condominiums. Defendants individually guarantied the loan, which was secured by a promissory note payable on October 15, 1987.

The loan was refinanced on February 12, 1988, and defendants, again as trustees, signed a new promissory note for $2 million. Under the new note, payable on February 12, 1989, Central could declare a default if the Trust failed to make a payment on time or in the amount due. Both defendants White and Smith personally guarantied this note. Defendants also signed inducement letters to Central in which they acknowledged that, because the loan would benefit them personally, they would guaranty all of the Trust's obligations to Central.

On June 30, 1988, defendants White and Smith individually executed a note for $425,000 to Central, accompanied by personal guaranties, in order to execute mortgages for nine condominium units.

Nearly one year later, on May 5, 1989, defendants as trustees were notified by Central that they were in default on the February 12, 1988 note. On November 8, 1989 and December 8, 1989, Central held foreclosure sales on the various units, including those owned personally by defendants White and Smith. The foreclosure sales netted $678,000, and the FDIC now sues to recover the deficiency.

### II.

#### Analysis

#### A.

Under Massachusetts law, once a plaintiff produces a promissory note and establishes the genuineness of the maker's signature thereon, the makers incur the burden of establishing a defense. Mass.Gen.L. ch. 106, § 3–307(2); *Guinness Import Co. v. DeStefano*, 25 Mass.App. 366, 518 N.E.2d 858, *rev. denied*, 402 Mass. 1101, 521 N.E.2d 398 (1988).

Here, the FDIC has established that the defendants signed the notes, mortgages, and guaranties. As a result, when the defendants failed to make timely payments on the

notes, Central obtained the right to call the entire principal and interest due. Following the foreclosure sales on November 8, 1989 and December 8, 1989, Central also acquired the right to seek a deficiency against the defendants. Mass.Gen.L. ch. 244, § 17B.[1]

■ In addition, because defendants Smith and White signed the guaranties[2] for the Trust loan, the FDIC contends that they are personally liable for that loan if the Trust is unable to pay the deficiency. Mass.Gen.L. ch. 106, § 3–416 (Section I).[3]

■ The FDIC also asserts that it is entitled to attorney's fees. Under Massachusetts law, even if the language of a guaranty does not call for payment of reasonable attorney's fees, when a defendant guaranties payment of a debtor's liabilities, and the debtor's notes provide for payment of reasonable attorneys' fees, the guarantor must pay the fees. *New England Merchants National Bank v. Hoss*, 356 Mass. 331, 249 N.E.2d 635 (1969). In this case, both the notes and mortgages called for attorneys' fees. Cassidy Aff.Ex. 12–14, 17.

**B.**

As noted above, both defendants assert that Central acted negligently with respect to the terms of the loan agreement, and that Central failed to honor its good faith obligation to the Trust and the individual defendants. See *Fortune v. National Cash Register Co.*, 373 Mass. 96, 364 N.E.2d 1251 (1977) (under state law, every contract carries an implied covenant of good faith and fair dealing). Defendants, therefore, appear to claim that they are excused from any deficiency liability.[4] The FDIC responds to each of defendants' claims individually, and also argues generally that defendants are barred from asserting these defenses and counterclaims pursuant to the estoppel doctrine established in *D'Oench, Duhme & Co., Inc. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1941), and its "statutory counterpart,"[5] 12 U.S.C. § 1823(e).[6]

Under the *D'Oench* Doctrine and § 1823(e), no agreement which tends to diminish or defeat the FDIC's interest in any asset acquired as receiver of an insured depository institution is valid, unless the agree-

---

**1.** According to the FDIC, Central followed statutory requirements and properly notified the defendants as makers of the promissory note of the foreclosure sales. Pl.'s Mem.Supp.Mot.Summ.J. at 7–8. Although it was unnecessary to send notice of the deficiencies to bind the defendants as guarantors of the note, *Seronick v. Levy*, 26 Mass.App. 367, 527 N.E.2d 746, 749–50, *rev. denied*, 403 Mass. 1104, 530 N.E.2d 797 (1988), plaintiff also alleges that this notice was sent. Pl.'s Mem.Supp.Mot.Summ.J. at 8.

**2.** The FDIC also contends that there was adequate consideration for the guaranties, and both Smith and White signed inducement letters acknowledging that (1) the loans would be beneficial to them, and (2) the guaranties were part of Central's inducement to make the loan. Pl.'s Mem.Supp.Mot.Summ.J. at 11.

**3.** Defendant White argues that when the 1986 loan was repaid in full in 1988, the related guaranty was extinguished. Defendant White's Statement of Contested Facts, ¶ 13.

The court finds that the language of the guaranty suggests otherwise. The guaranty provides, in relevant part, that "[t]his undertaking shall operate as a continuing and absolute guaranty and shall remain in full force and effect until receipt by the bank of written notice of the revocation of this guaranty." Because defendant White does not allege that he sent a written

revocation of the guaranties, the court finds that the guaranties were not extinguished by the repayment of the 1986 loan.

The court notes as well that both defendants signed guaranties for the 1988 loan which expressly provide that they could be held liable for the Trust's obligations to Central. *See* Cassidy Aff., Ex. 10, 11.

**4.** While the possibility of a valid set-off or recoupment claim does not preclude the summary enforcement of debt instruments, *see Levy v. FDIC*, 7 F.3d 1054, 1057 (1st Cir.1993), defendants assert that Central's actions affected their liability on the notes and guaranties. For example, defendant White specifically argues that it was the bank that initially breached the loan agreement, when Central allegedly failed to comply with the terms of the note, and acted negligently and in bad faith.

**5.** *In re 604 Columbus Ave. Realty Trust*, 968 F.2d 1332, 1340 (1st Cir.1992).

**6.** Although the decision in *D'Oench* addressed the situation in which the FDIC was acting in its corporate capacity, it is well established that the doctrine may be applied when the FDIC acts in its capacity as receiver. *Timberland Design v. First Service Bank For Sav.*, 932 F.2d 46, 49 (1st Cir.1991).

ment (1) is in writing, (2) is executed by debtor and the institution, contemporaneously with the acquisition of the asset by the institution, (3) was approved by the board of directors of the bank or its loan committee, as reflected in the minutes of the board or committee, and (4) has been preserved as an official record of the bank. 12 U.S.C. § 1823(e).

█ But it has also been established that the FDIC cannot use the *D'Oench* Doctrine or § 1823(e) to invalidate a claim based upon the same agreement on which the FDIC brought the action. *See FDIC v. Panelfab Puerto Rico, Inc.,* 739 F.2d 26, 30 (1st Cir. 1984); *Howell v. Continental Credit Corp.,* 655 F.2d 743, 747 (7th Cir.1981). Rather, as the First Circuit explained in *Levy,* claims may survive application of the *D'Oench* Doctrine and § 1823(e), if the claims are contained either in the instrument that the FDIC seeks to enforce *or* if they are contained in closely related, "integral" loan documents. *Levy,* 7 F.3d at 1057–58.[7]

To determine whether the *D'Oench* Doctrine, as codified at 12 U.S.C. § 1823(e), bars defendants from asserting their affirmative defenses, defendants' claims must be grouped into two categories: (1) claims arising from Central's alleged noncompliance with the terms of the agreement; and (2) claims arising from Central's alleged bad faith. The court examines all of defendants' claims below.

### i. Claims Arising from Central's Alleged Noncompliance with the Terms of the Loan Agreement

Both defendant White and Smith argue that Central "exhibited bad faith and negligence" when it failed to comply with the express terms of the original construction loan by improperly advancing funds and mis-

applying the proceeds from the sales of condominiums.

█ First, defendant White specifically alleges that Central did not comply with the condition precedent in the loan requiring specific documentation prior to advancing additional funds. Because Central "abdicated its duty to the Trust[,]" White alleges that both he and the Trust were damaged. Def. Whites' Mem.Opp'n.Mot.Summ.J. at 7–9.

As in *Howell,* defendants' assertion "arises directly and explicitly from the provisions" of the agreement that the FDIC now seeks to enforce. *Howell,* 655 F.2d at 747; *See also Levy,* 7 F.3d at 1057–58. Consequently, *D'Oench* and § 1823(e) cannot be held to preclude the defendants from asserting this claim.

█ But the court finds that Central owed no duty to defendants as borrowers or guarantors to exercise reasonable care before approving additional loans. *Shawmut Bank, N.A. v. Wayman,* 34 Mass.App. 20, 606 N.E.2d 925 (1993); *In re Fordham,* 130 B.R. 632, 646 (Bankr.D.Mass.1991). Defendant White argues that, as "a maker or fiduciary maker," he never waived his right to assert a defense against a deficiency claim, because he never signed a waiver and could not waive the contract rights. *See* Defs.' Mem. Opp.Mot.Summ.J. at 6–7.[8]

The language of the waivers clearly suggests otherwise. Both of the guaranties specifically provide that:

"[t]he undersigned assents to any indulgence or waiver which the Bank may grant or give the Borrower and/or any other person liable or obligated to the Bank for or on the Liabilities. The undersigned authorizes the Bank to alter, amend, cancel, waive, or modify any term or condition of the liabilities and of the obligations of any other person liable or obligated to the

---

7. In noting these two exceptions to *D'Oench,* the First Circuit cites several circuit decisions, including the Seventh Circuit's decision in *Howell.* In *Howell,* the court specifically observed that when "the asset upon which the FDIC is attempting to recover is *the very same agreement* that the makers allege has been breached by the FDIC's assignors, § 1823(e) does not apply." *Howell,* 655 F.2d 743, 747 (emphasis in original).

8. White also contends that this case is distinguishable from *In re Fordham* because the contract language in that case specifically provided that the bank could make advances even if the Borrower did not fulfill all of the conditions.

Bank for or on the Liabilities, without notice to, or consent from, the undersigned."

Cassidy Aff., Ex. 10, 11.

Given this blanket authorization, the court finds that Central's alleged failure to require strict compliance with the terms of the agreement does not discharge the defendants from liability or impose on Central a duty of care. *See Shawmut Bank*, 606 N.E.2d at 927 (while an increase in the amount of debt without the knowledge of guarantor would normally discharge her liability, the express terms of the guaranty waiving her right to notice and assent caused guarantor to remain liable for guaranty).[9] *See also In re Fordham*, 130 B.R. at 643 (noting that waiver of defense provisions in guaranties are enforceable in Massachusetts); *Merrimack Valley National Bank v. Baird*, 372 Mass. 721, 363 N.E.2d 688 (1977) (guarantors not discharged from liability even though bank altered repayment terms without express assent of guarantors, because guarantors consented to the acts in advance).

 Defendant White next argues that Central breached its agreement with defendants and demonstrated bad faith and negligence when it improperly applied the proceeds from the sale of the individual condominium units to the outstanding principal balance on the 1988 loan.[10] He contends that "through the improper application of unit

sales proceeds[,]" Central "maintained an artificially high interest balance due, constantly keeping [the] Trust in arrears on interest." Def. White's Mem.Opp'n.Mot.Summ.J. at 10.

Because the defendants allege that Central violated the terms of the Commitment letter, which appears to constitute a "closely related or 'integral'" document as outlined in *Levy*, this claim also falls within the *Howell* exception to the *D'Oench* Doctrine. But the court agrees with plaintiff's observation that even if some of the sale proceeds had been "misallocated"[11] it had a *de minimis* effect on defendants' interest payments—approximately $2000 over 14 months—and did not excuse defendants' default. As a result, the court concludes that neither of defendants' claims, arising under the loan agreement or closely related documents, excuse the defendants from liability for the deficiency.

### ii. Claims Arising from Central's Alleged Bad Faith.

 The defendants also contend that Central generally violated its duty of good faith and diligence when it conducted the foreclosure sale and seized rent payments directly from the tenants.[12] With respect to the foreclosure sale, both defendants White and Smith contend that (1) the sale prices were too low,[13] (2) the procedure at the sale

---

9. Moreover, as noted by the FDIC, it is "hornbook law" that a condition precedent in favor of one of the parties may be waived by that party. *See Walter E. Heller & Co. v. American Flyers Airline Corp.*, 459 F.2d 896, 901 (2d Cir.1972); *see also American Title Insurance Company v. East West Financial, et. al*, 16 F.3d 449, 459 (1st Cir.1994) (court notes that condition to party's duty to perform can be eliminated by a voluntary expression of waiver).

10. White notes that the 1988 Commitment Letter to the Trust provides that 90 percent of the sale proceeds were to be applied to reduce the principal on the 1988 loan. White alleges that the bank applied 92.9 percent toward the 1988 loan, depriving the Trust of working capital, and less than 90 percent toward the principal, inflating the interest payment.

11. Plaintiff appears to concede that as much as an additional $17,000 should have been applied to the principal.

12. *See Castro v. Linchitz*, 297 Mass. 381, 384–85, 8 N.E.2d 744 (1937) (outlining a claim for bad faith in the conduct of a foreclosure sale).

13. Defendants also allege that the bank had knowledge of a substantially higher offer for the property—$1.5 million—but failed to act upon the offer until it had lapsed. Defs' Mem. Opp'n.Mot.Summ.J. at 12.

But the FDIC responds that the offeror's financial strength was unknown and that the offerors lacked any experience with a condominium venture. Moreover, the FDIC correctly notes that the Supreme Court has held that offers to purchase are inadmissible to show evidence of value. *Sharp v. United States*, 191 U.S. 341, 348–49, 24 S.Ct. 114, 115–16, 48 L.Ed. 211; *See also Grenier v. City of New Bedford*, 4 Mass.App.Ct. 152, 344 N.E.2d 215 (1976) (*citing Sharp*, 191 U.S. at 349–49, 24 S.Ct. at 115–16).

was improper,[14] (3) the selling of the condominiums on different days affected the sale prices, and (4) the advertising used was commercially unreasonable.[15] The court finds that this claim is subject to the requirements of the *D'Oench* Doctrine and § 1823(e).

In *Langley v. Federal Deposit Ins. Corp.*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), the Supreme Court held that the *D'Oench* Doctrine and § 1823(e) applied to a claim that the bank procured an agreement with the debtors through intentional misrepresentations. The Court concluded that the essence of the plaintiffs' claim was that the bank had made certain warranties regarding the land purchased by the debtors, the veracity of which was a condition to performance of the plaintiffs' obligation to repay the loan. *Id.* at 90–91, 108 S.Ct. at 401–01. The Court then concluded that this condition constituted an "agreement" subject to the provisions of § 1823(e).

In this case, the defendants seem to argue that when Central consented to their loan agreement, Central essentially guarantied that it would perform its duties, under the agreement, in good faith as a condition precedent to defendants' performance. When Central allegedly failed to conduct the foreclosure sale in good faith, it breached this implied condition of the agreement.

Under the Supreme Court's decision in *Langley*, this claim clearly appears to be based upon an "agreement" subject to the requisites of § 1823(e). As a result, defendants' claim is barred by *D'Oench* and § 1823(e), if the requirements of the Doctrine are not met. *See Schultz v. Rhode Island Hospital Trust National Bank, N.A. et. al;* C.A. No. 88–2870, slip op. at 5–7 (D.Mass. Nov. 16, 1993) (finding plaintiff's claim for breach of the covenant of good faith and fair dealing was based upon an implied agreement and subject to the requirements of *D'Oench* ); *cf. McCullough v. FDIC*, 987

F.2d 870, 873 (1st Cir.1993) (construing plaintiff's claim that bank's omissions led to misrepresentations as a breach of bank's implied warranty and was subject to the requisites of § 1823(e)). Because defendants never establish that this claim meets any of the requisites of the *D'Oench* Doctrine or § 1823(e), this claim is barred. *See FDIC v. Rusconi*, 808 F.Supp. 30, 43 (D.Me.1992) (adopting the holding of the Fifth and Tenth Circuits and several district courts and finding that claims based on a breach of [the] implied covenant of good faith and fair dealing are barred as a matter of law by *D'Oench* and § 1823(e)). The court respectfully disagrees with the reasoning in *New Bank of New England, N.A. v. Callahan*, 798 F.Supp. 73, 77 (D.N.H. 1992), in which that court determined that because state law imposes a duty to act in good faith, a claim for a breach of that duty cannot be barred by *D'Oench*.[16]

In any event, the court also finds that defendants have not introduced sufficient evidence to permit a reasonable factfinder to find that Central failed to act in good faith during the sale. When considering a motion for summary judgment, the court should allow the motion unless the nonmoving party can establish that the evidence, viewed in a light most favorable to the nonmoving party, would allow a reasonable factfinder to return a decision for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)).

In this case, when Central exercised its power of sale, it had a duty to act in good faith and use reasonable diligence to protect the interests of the mortgagor. *West Roxbury Cooperative Bank v. Bowser*, 324 Mass. 489, 492, 87 N.E.2d 113 (1949). This duty required that Central conduct the sale of the property fairly and in good faith by observing the requirements outlined by stat-

---

14. Defendants specifically allege that statements of conditions were read at the auction, which "chilled" prospective buyers.

15. Defendants do not explain what advertising would be "reasonable," nor do they cite any case authority to support their argument that Central

failed to advertise the foreclosure sales in a commercially reasonable manner.

16. Indeed, state law likewise imposes a duty not to commit fraud, but that did not preclude the Supreme Court from finding that the *D'Oench* Doctrine applies to claims of fraud in *Langley*.

ute and the mortgage. *Seppala & Aho Construction Co. v. Petersen*, 373 Mass. 316, 367 N.E.2d 613, 619 (1977). But there is no requirement that a mortgagee who is both the seller and buyer must pay the full value of the property. *Id.* 367 N.E.2d at 620. Moreover, the burden is on defendants to establish that Central failed in its duties. *West Roxbury Cooperative Bank*, 324 Mass. at 492, 87 N.E.2d 113.

■■■■■ Here, defendants have failed to introduce any affidavits or any other evidence to support their argument that Central violated its duty with respect to the foreclosure sale. Nor have defendants provided any evidence that Central was dishonest in its dealings with them or purposely injured their rights to obtain the benefits of the contract. *Shawmut Bank*, 606 N.E.2d at 928. While the decision to hold the sale on separate days may have reflected poor business judgment, the court finds that this is insufficient evidence to convince a reasonable factfinder that Central acted in "bad faith", thereby excusing the defendants from liability. *Cf. id.* (court notes that while the bank "could certainly have been more diligent in its monitoring and its lending decisions[,]" the lack of such diligence is not tantamount to bad faith).[17]

■■■■■ Defendant White also argues that Central exhibited bad faith when the bank seized the rents of the first floor condominium units by writing directly to the tenants. He alleges that Central's conduct was illegal[18] and chilled potential sales. White also argues that the bank's subsequent refund of the rent money "did not remove the bad faith taint." Def. White's Mem. Opp'n.Mot.Summ.J. at 10–11.

But because this claim also seems to rest on the implied agreement by Central to act in good faith, it is also subject to the requirements of the *D'Oench* Doctrine and § 1823(e). Defendants do not establish that any of these requirements have been satisfied. As a result, the court determines that the claim is barred.

### III.

### Conclusion

For the foregoing reasons, plaintiff's motion for summary judgment will be allowed.

An order will issue.

---

17. Defendants also allege that Central violated a fiduciary duty it owed them both individually and as trustees. But under Massachusetts law, a bank does not owe guarantors a duty of care. *First National Bank of Boston v. Slade*, 379 Mass. 243, 250, 399 N.E.2d 1047 (1979); *In re Fordham*, 130 B.R. at 648–49; *Shawmut Bank, N.A.*, 606 N.E.2d 925. As a result, this claim again does not excuse the individual defendants from liability.

18. Although the parties' agreement specifically provides that, upon default, the bank was entitled

to seize rents, *See* Cassidy Aff.Ex. 17 at 12, Massachusetts law does not allow a mortgagee to seize rents unless the mortgagee has first assumed possession of the property. *See In re Prichard Plaza Associates Limited Partnership*, 84 B.R. 289, 297 ("We therefore conclude from Massachusetts common law as well as Massachusetts statutory law that a mortgagee must take possession of the property in order to have the right to collect rents even if he has a specific assignment of rents in the mortgage.")