**FEDERAL DEPOSIT INSURANCE CORPORATION**

**v.**

**HOPPING BROOK TRUST; James W. Flett and John J. Arno, both Individually and as Trustees of Hopping Brook Trust; Flett Corporation, Parkland Corporation, James W. Flett & Sons, Inc., James W. Flett Co., Inc. and James W. Flett Equipment Corp., all Massachusetts Corporations.**

Civil Action No. 95–11780–GAO.

United States District Court,
D. Massachusetts.

Sept. 30, 1996.

Clark van der Velde, Federal Deposit Insurance Corporation, Franklin, MA, for Federal Deposit Insurance Corporation.

Christopher M. Perry, Terance P. Perry, Brendan J. Perry, Brendan J. Perry & Associates, P.C., Holliston, MA, for Hopping Brook Trust, James W. Flett, John J. Arno, Flett Corporation, Parkland Corporation, James W. Flett & Sons, Inc., James W. Flett Company, Inc., James W. Flett Equipment Corp.

## MEMORANDUM AND ORDER

O'TOOLE, District Judge.

The plaintiff Federal Deposit Insurance Corporation ("FDIC") brought this action to recover on a promissory note and two guaranties. The defendants counterclaimed alleging breach of contract and breach of the implied duty of good faith and fair dealing. The FDIC has now moved to dismiss the counterclaims and for partial summary judgment on its complaint. The defendants, in turn, have moved for summary judgment on all claims in the complaint, contending that they have been discharged from their obli-

gations under the note and guaranties. For the reasons articulated below, the Court grants the FDIC's motion for partial summary judgment and denies the defendants' motions.

## I. BACKGROUND

On October 28, 1987, the defendants James W. Flett and John J. Arno, as trustees of Hopping Brook Trust, entered into a loan agreement with The Home National Bank of Milford, Massachusetts (the "Bank") and gave a promissory note to the Bank in the principal sum of $4 million. The note was secured by a mortgage on a parcel of land owned by the trust, a personal property security interest, and an assignment of rents and leases. Flett and Arno also each executed a separate personal guaranty of the trust's obligations up to a maximum of $1 million. On November 17, 1987, Flett and Arno, acting as trustees, executed an amendment to the loan agreement that provided for partial releases of parcels secured by the mortgage that might be sold prior to the completion of the entire project.

On June 1, 1990, the Comptroller of the Currency declared the Bank insolvent, and the FDIC was appointed its receiver. In its general corporate capacity, the FDIC acquired (from itself as receiver) certain assets of the Bank, including the promissory note and the guaranties it sues upon in this action. On June 3, 1990, relying upon 12 U.S.C. § 1821(e)(1), the FDIC, acting as the Bank's receiver, disaffirmed the Bank's commitment to advance further funds to the Hopping Brook Trust under the loan agreement. The loan eventually went into default in 1991, and the five-year note matured in accordance with its terms in 1992. After making unsuccessful demand for payment, the FDIC instituted this action to recover on the note and the guaranties.

On January 25, 1996, the FDIC foreclosed on the mortgage pursuant to a power of sale. The FDIC did not send advance written notice to any defendant of its intention to foreclose or of their potential liability for any resulting deficiency.

## II. MOTION TO DISMISS THE COUNTERCLAIM

The gist of the counterclaim is that the defendants were unlawfully damaged by the FDIC's refusal to advance further funds under the loan agreement. The FDIC's breach is alleged to have occurred "on or about June 3, 1990" (Counterclaim, ¶ 95), which is the date of the FDIC's letter disaffirming the failed Bank's future obligations. The FDIC argues that any claims arising from such a repudiation can only be brought against the FDIC in its capacity as receiver and not against the FDIC in its general corporate capacity, the capacity in which it appears as plaintiff and counterclaim defendant here. The Court agrees.

First, it is settled, and the defendants acknowledge, that in discharging its statutory mandates, the FDIC acts in distinctly expressed and differentiated capacities. *See Lawson v. Federal Deposit Ins. Corp.*, 3 F.3d 11, 13 (1st Cir.1993); *Federal Deposit Ins. Corp. v. Roldan–Fonseca*, 795 F.2d 1102, 1109 (1st Cir.1986). When acting in its corporate capacity, the FDIC cannot be held liable for acts undertaken by it in its capacity as a receiver. *Roldan–Fonseca*, 795 F.2d at 1109. The FDIC as receiver has the right to disaffirm or repudiate agreements of the failed bank, *see* 12 U.S.C. § 1821(e)(1), and as receiver, the FDIC may be liable for damages caused by the disaffirmance or repudiation. *See* 12 U.S.C. § 1821(e)(3).

This case was commenced by the FDIC not as receiver but rather in its general corporate capacity to collect what it says is owed under instruments held by it in that capacity. The defendants' counterclaim complains of actions taken by the FDIC as receiver. Addressed against the FDIC in its general corporate capacity, the counterclaim is misdirected. *Roldan*, 795 F.2d at 1109. The matter is not just a fussy technical one. Claims against the FDIC as receiver are satisfied from the receivership estate. The defendants' attempt to avoid having to advance their claims against a limited, and perhaps inadequate, estate and so, as the FDIC puts it, to "jump the creditor queue," must be rejected. The law is clear that the FDIC-as-corporation and the FDIC-as-receiver are

two separate legal entities with separate statutory missions. Claims for damages arising out of the repudiation of the loan agreement cannot be brought against the plaintiff in this case. The defendants' counterclaim must be dismissed.

## III. CROSS MOTIONS FOR SUMMARY JUDGMENT

The amended complaint contains twelve counts. Count I is an action on the promissory note against the Hopping Brook Trust. Counts II and III assert the claims against Flett and Arno, respectively, under their guaranties. Count IV asserts a claim under the note against Flett and Arno on the theory that, although they did not execute the note personally, they are nonetheless liable on it under Massachusetts law because they are simultaneously trustees and beneficiaries of a nominee trust. The remaining counts (V through XII) seek injunctive relief aimed at assisting the collection of whatever judgment the FDIC may recover under any of Counts I through IV.

The defendants have filed two motions for summary judgment, asserting alternate grounds for the entry of judgment in their favor as to all the claims in the complaint. The first motion advanced the argument that an amendment to the loan agreement between the Hopping Brook Trust and the Bank made after the individual defendants had executed their personal guaranties effectively precludes their liability under those guaranties. The second motion relies on the proposition that the defendants' obligations have been discharged by the FDIC's failure to give notice that it intended to pursue recovery of any deficiency remaining after foreclosure of the mortgaged real estate, as required by Massachusetts statutes regulating foreclosures. For its part, the FDIC has moved for summary judgment against the defendants Flett and Arno on their personal guaranties.

▮▮▮ Summary judgment is appropriate whenever "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 36–37 (1st Cir. 1995). The Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Barbour*, 63 F.3d at 36. These standards do not differ in situations where, as here, both parties have moved for summary judgment. "When facing cross-motions for summary judgment, a court must rule on each motion independently, deciding in each instance whether the moving party has met its burden under Rule 56." *Dan Barclay, Inc. v. Stewart & Stevenson Servs., Inc.*, 761 F.Supp. 194, 197–98 (D.Mass.1991) (citing 10A Charles A. Wright et al., *Federal Practice and Procedure: Civil 2d* § 2720 (1983)).

### A. *Post–Guaranty Amendment of the Loan Agreement*

▮▮▮ Flett's and Arno's guaranties were signed October 28, 1987, the same day as the promissory note and related documents, including the loan agreement, were executed. A few weeks later, on November 17, 1987, Flett and Arno, acting not individually but as trustees of the Hopping Brook Trust, executed an amendment to the loan agreement, providing that, as any property covered by the mortgage was sold, the trustees would pay the Bank, "on a partial release basis, the sum of $40,000.00 per acre." The defendants argue that this amendment amounted to a change in the original agreement injurious to them as guarantors and that it therefore discharged them, as a matter of law, from their obligations under the guaranties. The defendants rely on some older Massachusetts cases for support. Their argument is unpersuasive.

To begin with, it may be noted, although the parties do not mention the point, that the defendants guaranteed the trust's obligations under the *promissory note*, and that the November 1987 amendment was to the *loan agreement*. The note itself was not amended. It is possible that an amendment to the loan agreement should be held the legal equivalent of an amendment to the note, although such an equation should probably

not be made automatically in all cases, but only in a particularly apt one. The parties themselves, after all, structured their transaction by executing a series of several agreements, and there does not seem to be any general reason why the separateness of the agreements should not be given due regard. So the premise of the defendants' argument—that the guaranteed agreement was amended—is a bit shaky at the outset.

It is also not apparent why or how the amendment referred to was actually or potentially injurious to the interests of the guarantors. As described, the amendment called for payments to the Bank if and when part of the mortgaged land should be sold. Of course, no part of the land could be transferred while covered by the mortgage unless the Bank consented to a partial release. The amendment thus permitted the trust, as it developed the property, to sell pieces of it and, from the proceeds, to pay down the loan. As a general matter, such an arrangement would be favorable, not injurious, to the interests of guarantors. If there might be particular circumstances where it would be harmful, no such particular unfairness is alleged by Flett and Arno.

But these observations are only a prelude. Even if it could be assumed that the partial release amendment changed the guaranteed obligation unfavorably to the defendants, they cannot succeed in their contention, because in executing the guaranty they agreed as follows:

> Guarantor expressly agrees that the holder of the Note may, in its sole and absolute discretion, without notice to or further assent of Guarantor, and without in any way releasing, affecting or impairing the obligations and liabilities of Guarantor hereunder: ... (ii) modify, amend or change any provisions of the Note; ... (iv) agree to the substitution, exchange, release or other disposition of all or any part of the collateral securing the Note....

*See* Amended Complaint, Ex. C, ¶ 2. This explicit consent defeats any argument that the amendment to the loan agreement released the guarantors. *See Provident Co-op. Bank v. James Talcott, Inc.,* 358 Mass. 180, 260 N.E.2d 903, 910–11 (1970); *Shawmut*

*Bank v. Wayman,* 34 Mass.App. 20, 606 N.E.2d 925, 927 (Ct.1993). In light of the terms of the guaranty, particularly the provision authorizing the Bank to act "in its sole and absolute discretion," Flett and Arno have no basis for contending that their assent was a necessary precondition to any modification or amendment to the agreement. *Shawmut,* 606 N.E.2d at 927.

### B. *Failure to Give Notice of Intention to Foreclose*

Under Massachusetts law, "[n]o action for a deficiency shall be brought ... by the holder of a mortgage note or other obligation secured by mortgage of real estate after a foreclosure sale by him ... unless a notice in writing of the mortgagee's intention to foreclose the mortgage has been mailed ... together with a warning of liability for the deficiency...." Mass.Gen.L. ch. 244, § 17B. The statute is intended to assure that mortgagors will have notice of the possibility that a foreclosure might not extinguish the full amount of their debt. Such notice enables them to "look out for their interests at the foreclosure sale." *Federal Deposit Ins. Corp. v. Henry,* 818 F.Supp. 452, 455 (D.Mass.1993) (citing *Palumbo v. Audette,* 323 Mass. 559, 83 N.E.2d 549, 550 (1949)); *see also Seronick v. Levy,* 26 Mass.App. 367, 527 N.E.2d 746, 750, *rev. denied,* 403 Mass. 1104, 530 N.E.2d 797 (1988) (explaining that a mortgagor might take steps to stimulate bidding at the foreclosure sale or decide to redeem or buy the property if made aware that a deficiency liability was impending).

The FDIC does not dispute that it did not give the notice required by the statute before foreclosing on the real estate mortgaged by Hopping Brook Trust. Consequently, the defendants' liability under the *note* is extinguished. *See Henry,* 818 F.Supp. at 455; *IAG Fed. Credit Union v. Laterman,* 40 Mass.App. 116, 661 N.E.2d 945, 948, *rev. denied,* 422 Mass. 1108, 664 N.E.2d 1198 (1996). The FDIC does not object to the entry of judgment in the defendants' favor under Counts I, IV and XII, which all depend on a viable deficiency claim based on the note.

Flett and Arno further contend, however, that the failure to give notice also relieves

them of liability under their *guaranties.* Massachusetts law is plainly to the contrary. A mortgagee is not required by § 17B to give notice to a guarantor of its intention to foreclose (and to pursue any deficiency). *Senior Corp. v. Perine,* 16 Mass.App. 967, 452 N.E.2d 1160, 1161, *rev. denied,* 454 N.E.2d 1276, 454 N.E.2d 1276 (1983); *see also Seronick,* 527 N.E.2d at 750 (noting that there exists no statutory obligation on the part of a foreclosing mortgagee to notify guarantors); *Henry,* 818 F.Supp. at 456. There is no apparent basis in Massachusetts law for arguing otherwise.[1]

### IV. CONCLUSION

The liability of Flett and Arno as guarantors is separate and distinct from any liability arising under the note. Because they were not entitled to receive notice of foreclosure and potential deficiency under Mass. Gen.L. ch. 244, § 17B, and they were not otherwise discharged from their liability under the guaranties, the FDIC's motion must be allowed.

For the foregoing reasons, the FDIC's motion to dismiss the counterclaims is ALLOWED. The defendants' motions for summary judgment are DENIED, except that Counts I, IV and XII are dismissed with prejudice. The FDIC's motion for partial summary judgment is ALLOWED, and judgment shall enter in the sum of $1 million, together with interest and costs, against the defendant Flett under Count II and against the defendant Arno under Count III.

Within twenty days of the entry of this Memorandum and Order, the FDIC shall file and serve a statement as to whether it intends to pursue the equitable remedies claimed in Counts V through XI.

IT IS SO ORDERED.

---

**1.** The case relied on by the defendants to "distinguish" *Perine, Chestnut Manor v. Abraham,* 16 Mass.App. 960, 452 N.E.2d 258 (1983), was itself distinguished by *Perine,* 452 N.E.2d at 1162. The present case is just like *Perine,* and not much like *Chestnut Manor.* In *Perine,* as here, the defendant had guaranteed a mortgage note up to a maximum of $1 million. The mortgagee foreclosed without giving the guarantor a notice conforming to § 17B. On that ground, the guarantor argued that his liability under the guaranty had been extinguished. The Massachusetts Court rejected the argument, and this Court is consequently bound to reject it as well.