FEDERAL DEPOSIT INSURANCE
CORPORATION, Etc., Plaintiff–
Appellee,

v.

HOPPING BROOK TRUST, et al.,
Defendants–Appellants.

No. 97–1113.

United States Court of Appeals,
First Circuit.

Heard June 6, 1997.

Decided July 3, 1997.

Christopher M. Perry with whom Brendan J. Perry, Terrance P. Perry and Brendan J. Perry & Associates, Holliston, MA, were on brief, for appellants.

Jaclyn C. Taner, with whom Ann S. Du-Ross, Assistant General Counsel, and Colleen B. Bombardier, Senior Counsel, Federal Deposit Insurance Corporation, Washington, DC, were on brief, for appellee.

Before TORRUELLA, Chief Judge, CAMPBELL, Senior Circuit Judge, and STAHL, Circuit Judge.

PER CURIAM.

This case concerns the personal guaranties by James W. Flett and John J. Arno of a loan made to Hopping Brook Trust by the Home National Bank of Milford, Massachusetts. The facts of the case are clearly set forth in the district court's opinion, *F.D.I.C. v. Hopping Brook Trust,* 941 F.Supp. 256 (D.Mass.1996). Because we believe the district court analyzed the appealed issues correctly, we affirm on the basis of the district court's opinion. We add only a few paragraphs for clarification.

Flett and Arno premise their contention that their obligations under the guaranties were discharged on three arguments.

■ First, they assert that Mass. Gen. Laws ch. 244, § 17B required the F.D.I.C. to notify them of its intent to foreclose the mortgage.[1] The Massachusetts courts have held that § 17B does not require the notification of guarantors, *see Senior Corp. v. Perine,* 16 Mass.App.Ct. 967, 452 N.E.2d 1160, 1161 (1983). Flett and Arno argue, nonetheless, that § 17B required notifying them because, despite the use of the term "guarantor" in the agreements, they are not really guarantors but primary obligors. They point to language in the guaranties providing for "primary, direct and immediate" liability, and cite *Chestnut Manor, Inc. v. Abraham,* 16 Mass.App.Ct. 960, 452 N.E.2d 258, 259 (1983), for the proposition that guarantors who are directly and unconditionally liable are really primary obligors.

Flett's and Arno's reliance on *Chestnut Manor,* an intermediate appellate decision not involving the application of § 17B, is misplaced. While the short exposition in *Chestnut Manor* leaves it unclear why the "guarantors" in that case were held to be primary obligors, an earlier Massachusetts Supreme Judicial Court case cited in *Chestnut Manor* indicates that Flett and Arno were, in any event, genuine guarantors. *See Charlestown Five Cents Sav. Bank v. Wolf,*

309 Mass. 547, 36 N.E.2d 390 (1941) (superseded by statute on a separate issue).

In *Wolf,* the Massachusetts Supreme Judicial Court stated:

> The intention of the parties as to the character of the liability assumed by the defendant[ ] ... is to be ascertained from a fair construction of all the language appearing in the note and in the [guaranty], according to the usual rules of interpretation, in the light of the subject matter involved and by giving appropriate effect to all the words in the note and in the [guaranty] where that is reasonably practicable.

*Wolf,* 36 N.E.2d at 391.

The state's highest court went on to reason that the use of the term "guaranty" and the inclusion of certain types of waivers in the agreement would only make sense if the agreement was in fact a guaranty. The Supreme Judicial Court wrote:

> The word "guarantee" appearing in the memorandum suggests, not a primary, but a collateral undertaking.... The phrases, "waiving demand and notice", and "No extension or indulgence or partial release shall prevent my remaining fully liable", are superfluous if, as the plaintiff contends, the parties intended that the defendant[ ] ... should become a comaker of the note. A demand or notice is not necessary in order to hold a party who is primarily liable on a note and a comaker of a note would not be discharged by any indulgence or extension of time granted by the payee to another comaker. But the phrases above quoted would, however, have real significance if the obligation of the defendant[ ] ... was that of a guarantor.

*Id.* 36 N.E.2d at 391–92 (citations omitted).

Similarly, in this case, the agreement was titled "Guaranty," contained an explicit waiver of "presentment and demand for payment and protest of non-payment" (paragraph 4 of the guaranties), and stated that the guarantors would remain liable even if the lender "waive[d] compliance with, or any default

---

1. Mass. Gen. Laws c. 244, § 17B states, in relevant part, "No action for a deficiency shall be brought ... by the holder of a mortgage note or other obligation secured by mortgage of real estate after a foreclosure sale by him ... unless a

notice in writing of the mortgagee's intention to foreclose the mortgage has been mailed ... to the defendant sought to be charged with the deficiency...."

under, or grant[ed] any other indulgences with respect to, the Note or any agreement or instrument securing the Note," (paragraph 2 of the guaranties). These waivers would have been superfluous if Flett and Arno were primary obligors rather than guarantors. *Id.* We agree with the district court that Flett and Arno were genuine guarantors. *See Hopping Brook Trust,* 941 F.Supp. at 261 n. 1.

 Flett's and Arno's second argument, not discussed by the district court, is that they are discharged under a provision of Massachusetts' version of the Uniform Commercial Code, Mass. Gen. Laws ch. 106, § 3–606.[2] The short answer to this contention is that Article 3 of the U.C.C. does not apply to guaranties because guaranties are not negotiable instruments. *See Pemstein v. Stimpson,* 36 Mass.App.Ct. 283, 630 N.E.2d 608, 613 (1994). Flett's and Arno's attempts to avoid this rule of law by claiming not to be guarantors but primary obligors fails for the reasons discussed above.

Flett's and Arno's third and final contention is that they are discharged under the common law because of an amendment to the Construction Loan Agreement effected some three weeks after the other agreements were signed. The amendment provided, "Borrower shall pay to Lender, on a partial release basis, the sum of $40,000 per acre on the sale or transfer by Borrower of any property covered under and secured by the Mortgage." Flett and Arno argue that this amendment materially and prejudicially altered the underlying loan which they had guarantied, resulting in a discharge under the doctrine of *Warren v. Lyons,* 152 Mass. 310, 25 N.E. 721 (1890) (holding that a guarantor's obligations may be discharged by a prejudicial change to the guarantied agreement to which the guarantor did not consent).

2. Mass. Gen. Laws ch. 106, § 3–606 states, in relevant part:
   (1) The holder discharges any party to the instrument to the extent that without such party's consent the holder
   (a) without express reservation of rights releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or

To the district court's clear explanation of its rejection of this argument we add only that language in paragraph 2 of the guaranties expressly waived any claim of legal or equitable discharge. The guaranties stated, "The obligations of guarantor under this guaranty shall be unconditional, irrespective of the genuineness, validity, regularity or enforceability of the Note or any other [sic] circumstances which might otherwise constitute a legal or equitable discharge of a surety or guarantor." Such broad waivers are enforceable under Massachusetts law. *See Shawmut Bank, N.A. v. Wayman,* 34 Mass.App.Ct. 20, 606 N.E.2d 925, 927 (1993).

*Affirmed.*

agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person, except that failure or delay in effecting any required presentment, protest or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest or notice of dishonor is effective or unnecessary. . . .