Furnari, J.
This is an action in contract to recover against defendants Samuel Goodrich and Steven Kiley upon their alleged personal guaranty of paymentfor goods sold and delivered by the plaintiff to defendant U.S. Carpet, Inc.
The sole issue presented for review is whether the defendants are individually and personally liable under the guaranty section of a corporate credit application which they signed by affixing their names followed by a designation of their corporate titles. The defendants deny personal liability on the ground that they endorsed the corporate application in a representative capacity only.
The case was submitted to the trial court upon the parties’ “Agreement to Statement of Facts.” Such agreement, which constituted a “case stated,” Scaccia v. Boston Elev. Rwy. Co., 308 Mass. 310, 311-312 (1941), disclosed the following: Defendants Kiley and Goodrich were, respectively, the president and treasurer of U.S. Carpet, Inc., acorporation engaged in the retail sale and installation of carpeting. U.S. Carpet, Inc. purchased $21,630.78 worth of carpets from the plaintiff. An execution in such amountwas issued upon an agreementfor judgment between the plaintiff and U.S. Carpet, Inc. and the execution remains unsatisfied.
The plaintiff extended credit to the corporation for these purchases pursuant to a January 14,1984 agreement captioned “New Account Credit Application.” The credit application lists the “Legal Náme" of the applicant as U.S Carpet, Inc., describes such concern as a “Corporation” operating a “Carpet-Linoleum Store” and sets forth various trade references. The application then states:
*216 In making this application, the undersigned understand that all accounts are payable according to the terms as shown on each invoice, and if not paid on or before said date are then delinquent The undersigned agree to pay and all service charges added each month on past due invoices. All charges are due and payable in full at P.O. Box 2467 Old Belgrade Road, Augusta, Maine 04330, unless notified in writing to the contrary. If credit is granted, the undersigned agree to the above terms and the undersigned are responsible for payment of the account The undersigned do further agree that if the account must be placed in the hands of an attorney for collection, or if collection is made through probate proceedings, the undersigned will pay a reasonable amount in attorney’s fees. It is further understood that when payment is not made in accordance with the terms of each invoice, shipment of future orders will be withheld.
In consideration of your extending credit to the above firm at the undersigned’s request, the undersigned hereby personally guarantee the payment of all of their obligations to you until such guarantee is withdrawn by the undersigned by certified mail to the above address. The undersigned waive notice of acceptance of the guarantee, notice of the sale of merchandise sold by you to the customer designated above, and notice of default. The undersigned consent to the extension of time of payment of the indebtedness or any portion thereof.
Immediately following the second paragraph are the signatures “Samuel Goodrich, Treasurer” and “Steven Kiley, President.”
Judgment was entered for the plaintiff against both individual defendants.
1. The presentation of a “case stated” requires an appellate court to apply the controlling principles of lawto, and order the correctjudgment upon,[2] the agreed facts withoutregard to conclusions drawn by the trial court. Eaton Financial Corp. v. Dewar, 1990 Mass. App. Div. 156 (Sept 24,1990) and cases cited.
The agreed facts in this case establish that the plaintiff extended credit for the purchase of goods to U.S. Carpet, Inc. upon a written credit application, that such application included a guaranty of payment for the corporation’s debt and that the defendants signed such application. The defendants’ principal contention on this appeal is that they signed such application solely in their representative capacities as corporate officers and cannot, therefore, be held liable for the corporation’s debt. In support of this proposition, the defendants rely upon G.L.c. 106, §3-403(3) which governs an authorized agent’s signature of a negotiable instrument.
The defendants’ personal liability, if any, for the corporate debt in question depended, however, not only upon the form of their signatures, but also upon the language or terms of the agreement they signed. The interpretation of an unambiguous written instrument is a matter of law for a court Great Atlantic and Pacific Tea Co. v. Yanofsky, 390 Mass. 326, 334 (1980). The credit application at issue is not a *217 negotiable instrument within the purview of Article 3 of the Uniform Commercial Code. We hold that the credit application signed by the defendants constituted in part a personal guaranty of any obligation owed to the plaintiff by U.S. Carpet, Inc., and that the defendants are thus individually and personally liable for the corporate debt at issue.
2. The ordinary meaning of the word “guaranty” is that someone else is primarily liable for a debt and that the guarantor will pay it if the primary debtor does not. Charlestown Five Cents Sav. Bank v. Wolf 309 Mass. 547, 549 (1941). The credit application signed by the defendants expressly states: “[i]n consideration of your extending credit to the above firm at the undersigned’s request, thé undersigned hereby personally guarantees the payment of all of their obligations to you....” This provision clearly identifies U.S. Carpet, Inc. as the entity primarily responsible for goods purchased on credit from the plaintiff, and unequivocally sets forth the personal guaranty of the undersigned defendants of payment of the corporation’s obligations. The individual liability of the defendants for the corporate debt is underscored by the use of the word “personally” which customarily connotes rights or obligations of an individual (s), or matters pertaining to human beings rather than impersonal entities or legal concepts. See BLACK’S LAW DICTIONARY 1029 (rev. 5th ed. 1979); WEBSTER’S NEW UNIVERSAL UNABRIDGED DICTIONARY OFTHE ENGLISH LANGUAGE 1338 (2d ed. 1983) :
The defendants argue that as no other signature for the corporation appears on the credit application so as to bind U.S. Carpet, Inc. to its terms, their signatures indicate action taken only in their corporate capacities as authorized agents to execute a contract in behalf of the corporation. Such interpretation would, however, improperly render the guaranty paragraph of the application superfluous because the corporation, as the firm to which credit was extended, would simply be guaranteeing its own debt. See Robinson Thread Co. v. Easy Line-Arts, Inc., 1983 Mass. App. Div. 316, 318. The construction of a contract of guaranty, like all other contracts, requires that every word and clause be given effect. Merchants Nat'l Bank v. Stone, 296 Mass. 243, 250 (1936). .
Ultimately, the liability of the defendants, as individual guarantors, is dictated by the terms of the written application “construed according to th'e usual rules of interpretation read in connection with the subject mater, the relations of the parties to the transaction and the well-understood usages of business.” Schneider v. Armour & Co., 323 Mass. 28, 30 (1948). Viewing the credit application in its entirety to ascertain the intent of the parties upon execution of this agreement, Cumberland Glass Mfg. Co. v. Wheaton, 208 Mass. 425, 434 (1911), it is clear that the defendants signed the application as guarantors personally and individually liable for any unpaid corporate debt owed to the plaintiff. The addition of their corporate titles to their signatures was merely descriptive and not indicative of the defendants’ legal undertaking or capacities. See Moran v. Manning, 306 Mass. 404, 410 (1940).
3. There being no error, the trial court’s judgment for the plaintiff is affirmed. Report dismissed.

 In a succinct and articulate memorandum of law, the trial judge ruled: “The new application states that the undersigned (Goodrich and Kiley) would personally guarantee the payment of all obligation of the defendant, U.S. Carpet and counsel fees.
“The manifest intent and purpose of the application was to induce the plaintiff to extend credit to the corporate defendant and for the plaintiff to secure payment of any obligations incurred by the corporate defendant The individual defendants as officers had a stake in the financial interest of the corporate defendant Albeit the corporate defendant did not sign the application as such, and the individual defendant signed in what appears to be a descriptive signature, nevertheless, the intent was to bind both individual defendants to pay the obligation of the corporate defendant. Obviously, as has been conceded in the agreed statement of facts, the corporate defendant owed the money. There would be no need to guarantee its own obligations. The obvious tenor of the guarantee is to fix liability on the individual defendants for the default of the corporate defendant
“I rule that both defendants are jointly liable.”