Curtin, J.
This is an action for breach of contract by plaintiff Boston Globe Newspaper Co. (“the Globe”) against defendants Folktree Concertmakers, Inc. (“Folktree”) and Harry Lipson (“Lipson”) to recover payment for advertising placed by the defendants in the Globe newspaper. The sole question posed on this Dist./Mun. Cts. R. A D. A, Rule 8C appeal by Lipson is whether he is personally liable for the advertising expenses in question on a written guaranty he allegedly signed only as the president of Folktree.
The parties filed cross-motions for summary judgment. After hearing, the trial court denied the defendants’ motions, and entered summary judgment for the Globe against both Folktree and Lipson.
The material facts are undisputed. Folktree is a closely held corporation engaged in the business of promoting and producing concerts. Lipson is its president. In October, 1970, Lipson completed the Globe’s “Standard Application for Credit” to obtain advertising in the Globe for Folktree concerts. The standard application form contained general credit information and credit references sections. Immediately below those sections, the application stated:
The foregoing information is true and correct. The undersigned hereby agrees, if credit is extended by Globe Newspaper Company (the ‘Globe’) to pay all bills in accordance with the Globe’s credit terms and authorizes the Globe to obtain credit information pertaining to the undersigned. If credit is extended by the Globe, the undersigned authorizes the Globe to disclose credit information pertaining to the undersigned’s account with third parties.
On the signature line following that section, Lipson executed the application for Folktree by signing “Harry Lipson as President of Folktree Concertmakers, Inc.” In the ‘Title” space just below the signature line, Lipson printed “President of Folk-tree Concertmakers, Inc.”
The application also contained a Guaranty, identified as such in bold capital letters, which provided:
GUARANTY
In consideration of Globe Newspaper Company (the ‘Globe’) extending credit to the above named applicant, the undersigned hereby unconditionally guarantees payment to the Globe of all amounts owed by the *207 applicant to the Globe. This is a continuing guaranty and shall cover all indebtedness, including indebtedness arising under successive transactions that either continue the indebtedness, or from time to time, renew it after it has been satisfied. The Globe may proceed against the undersigned whether such applicant is joined in such action or note. This Guaranty may be terminated by the undersigned by giving written notice of revocation to the Globe at the above address by certified or registered mail, but such revocation shall not be effective until received by the Globe and shall not affect the liability of the undersigned as to any indebtedness incurred by the applicant prior to receipt of such notice by the Globe. This Guaranty shall be binding upon the executor or personal representative, and successors and assigns of the undersigned.
On the signature line directly below the Guaranty, Lipson signed individually, as “Harry Lipson.” On the line below that, he printed his named and added “as President.” Lipson also included the corporate address and federal tax identification number of Folktree, rather than his personal address and social security number.
Between 1970 and 1995, Folktree placed approximately $67,000.00 in advertisements in the Globe and paid for the same. Sometime in 1995, however, Folktree failed to pay for $8,556.55 worth of advertising, which resulted in this lawsuit.
Lipson contends that he is not personally liable as guarantor for Folktree’s corporate debt because he signed the guaranty solely in his capacity as president of Folktree. We disagree.
A guarantor’s individual liability is determined not only from the form of his signature, but also from the terms of the written guaranty he signs. Merrimack Valley Nat'l Bank v. Baird, 372 Mass. 721, 723 (1977); NRF Distributors, Inc. v. U.S. Carpet, Inc., 1990 Mass. App. Div. 215, 217. The interpretation of the unambiguous language of a guaranty is a question of law for a trial court. Encon Indus., Inc. v. Heritage Distrib., Inc., 1987 Mass. App. Div. 158, 159. See generally, Great Atlantic & Pacific Tea Co. v. Yanofsky, 380 Mass. 326, 334 (1980).
Although the guaranty in this case does not use the words “personally” or “personal,” a fair reading of the terms of the contract renders it clear that the Globe required a personal guaranty before it would permit the corporate defendant to purchase advertising on credit. The guaranty expressly and unambiguously states that “[i]n consideration for the Globe extending credit to the above-named applicant [i.e., Folktree] the undersigned hereby unconditionally guarantees payment to the Globe of all amounts owed by the applicant to the Globe.” The consistent use of the term “applicant" when referring to the corporate entity as distinguished from the “undersigned” throughout the guaranty indicates the parties’ clear intent to have someone other than the corporation guarantee its debt. The ordinary meaning of the term “guaranty” is indeed that “someone else is primarily liable for a debt and that the guarantor will pay it if the primary debtor does not.” NRF Distributors, Inc. v. U.S. Carpet, Inc., supra at 217. See also Charlestown Five Cents Sav. Bank v. Wolf, 309 Mass. 547, 550 (1941); D’Annolfo v. D'Annolfo Construc. Co., 39 Mass. App. Ct. 189, 191 (1995); Mister Jay Fashions, Inc. v. Baybank Middlesex, 1981 Mass. App. Div. 247, 249 n. 2.
If, as Lipson contends, the “undersigned” is construed to mean Lipson in only his capacity as president of Folktree, the guaranty would be meaningless as Folk-tree would then be simply guaranteeing its own obligation to the Globe. NRF Distributors, Inc. v. U.S. Carpet. Inc., supra at 217. Such an interpretation would violate ordinary cannons of construction which require that every word and clause in a guaranty or other written contract be given effect if possible. Merchants Nat'l Bank v. Stone, 296 Mass. 243, 250 (1936); Computer Sys. of America, Inc. v. Western Reserve Life Assur. Co. of Ohio, 19 Mass. App. Ct. 430, 437-438 (1985). Similarly, a *208 conclusion that Lipson signed the guaranty in a purely representative capacity would render the guaranty mere surplusage. Seronick v. Levy, 26 Mass. App. Ct. 367, 371 (1988).
The guaranty in the credit application was set forth conspicuously in bold type. Lipson was on notice that the Globe would not extend credit to Folktree for the advertising necessary for the corporation’s business unless Lipson assumed personal responsibility by executing the guaranty in his individual capacity. The record is devoid of any contrary suggestion that the parties agreed that the corporation would be solely liable on the credit agreement and guaranty. See First Safety Fund Nat'l Bank v. Friel, 23 Mass. App. Ct. 583, 585-586 (1987).[2] In the absence of such an agreement and in view of the clear language of the credit application and guaranty in question, Lipson was personally liable as guarantor. He in fact executed the guaranty individually, and the mere addition of his corporate title on a line below that signature must be considered merely descriptive rather than indicative of his legal undertaking or capacity.
Accordingly, the trial court’s entry of summary judgment for the plaintiff is affirmed. The defendant’s appeal is dismissed.
So ordered.

 It should be noted that Friel is a G.L.c. 106, §3403 case. The guaranty at issue on this appeal was not a negotiable instrument and, contrary to Lipson’s arguments, is not governed by Article 3 of the Uniform Commercial Code. Federal Deposit Ins. Corp. v. Hopping Brook Trust, 117 F. 3d 639, 641 (1st Cir. 1997).