Merrick, P.J.
This is a Dist./Mun. Cts. R. A. D. A, Rule 8C appeal by defendant Central Square Insurance Agency (“Central Square”) following the entry of judgment for the plaintiff on both its summary process complaint for possession and the defendant’s counterclaim.
Plaintiff Cambridge Chamber of Commerce (the “Chamber”) owns and occupies a commercial building at 857-859 Massachusetts Avenue in Cambridge, and rents out a portion of it to small businesses. Avon Products, Inc. (“Avon”) rented a basement unit in the building under a written lease (the “Lease”) for a five year term commencing April 15,1994, with self-executing extensions thereafter. Paragraph 28 of the Lease prohibited any lease assignment, subletting or occupancy by anyone other than Avon without the prior written consent of the Chamber.[2] Paragraph 24 authorized the Chamber to terminate the Lease by a seven day written notice to vacate upon any breach of the Lease by Avon.
Sometime prior to April, 1997, Avon became interested in relocating and in subletting the premises. Central Square had entered into an agreement for judgment in a summary process action with its prior landlord, which obligated it to vacate its former office by April 30,1997. Avon and Central Square met at the end of March, 1997, and agreed to attempt to secure the Chamber’s approval of a sublease. They dealt with Joseph Barrell (“Barrell”), a director of the Chamber and its “Building Manager.” While Barrell was held out as the person with whom to deal, the approval of the Chamber’s Finance Committee was necessary for any sublease. On April 11, 1997, Central Square’s owner and president, David J. Segal (“Segal”), faxed a completed Commercial Rental Application to Barrell. The application requested that the Chamber not contact Central Square’s prior landlord.
On April 15,1997, Barrell sent a letter to Avon, with copies to Central Square and the Chamber’s legal counsel. In language upon which Central Square has primarily based this appeal, the letter began:
*28 The Chamber agrees that it will consent to Avon subletting the space that Avon now occupies to David Segal and Central Square Insurance Agency. The Chamber understands that David Segal will sign all agreements both Corporately and Individually [capitals in original].
The letter went on to list other provisions pertaining to the sublease and to the parties' obligations,[3] and concluded with the following sentence:
In the event an agreement is not in place by April 30,1997, this letter of intent will terminate.
On April 18,1997, Segal wrote to Barrell on Central Square letterhead, stating “I feel that we are all in agreement regarding this transaction and sublease.” He further stated that Avon would comply with all its obligations as outlined in Barrell’s April 15th letter, and that he would meet with Barrell “in the next few weeks to iron out the terms of the extensions and/or options contained in your consent letter.” Segal pointedly omitted any reference to his personal guaranty, and signed the letter: “David J. Segal, President.”
Avon drafted a proposed sublease and sent it to Central Square for signature, with a copy to the Chamber’s attorney. On April 29,1997, Avon sent an unsigned copy of the proposed sublease to Barrell, stating that Segal had agreed to its terms. The proposed sublease did not name Segal as either a party or a guarantor of Central Square’s performance. On May 9,1997, an employee affixed Segal’s signature to the sublease by signature stamp. The words “President, Central Square Insurance” were then printed immediately below the signature. As late as the commencement of trial, Avon still had not signed the sublease. On September 30,1997, the second day of trial, Avon and Central Square sought to introduce into evidence an amended version of the sublease which had been signed only that day. The amended sublease still contained no personal undertaking by Segal. No sublease signed by either party was ever provided to the Chamber.
On or about May 1,1997, Central Square moved into the premises, sharing it for a time until Avon moved out. The Chamber was never informed that Central Square had commenced occupancy, and discovered it only when the Chamber’s president learned that Central Square’s telephone lines had been installed and saw its employees working on the premises and a handwritten Central Square sign on the front door. On May 12,1997, the Chamber sent notices to quit to both Avon and Central Square on the ground that Central Square’s occupancy was a violation of Paragraph 28 of Avon’s Lease. Avon contacted the Chamber’s attorney, and learned that the Chamber had “now found out some information about [Segal’s] business practices,” and “did not like how he conducted himself throughout this whole transaction and they were going to let us out of our lease and lease to someone else.”
On June 9,1997, the Chamber filed separate actions, later consolidated for trial, for summary process against Central Square and Avon. Central Square filed a pro se answer asserting its right to possession under a sublease to which the Chamber had assented. It also filed a “counterclaim” consisting of nothing more than an itemized list of damages, which set forth no facts or legal theory sufficient, even *29 under notice pleading, to state a claim against the Chamber.
On July 8,1997, two days before the scheduled trial date, Central Square filed, without leave of court, an amended answer which asserted estoppel as an affirmative defense, particularized its counterclaim and set forth a claim for jury trial. The Chamber moved to strike the pleading on the day of trial. The court offered to allow the amendment, although not necessarily including the jury claim, if Central Square paid costs for a continuance. Central Square declined that offer, and the trial proceeded.
After two days of trial, judgment was entered for the Chamber on both its claim for possession against both Avon and Central Square, and on Central Square’s counterclaim. No money damages were awarded. Avon did not appeal. Central Square’s appeal alleges: (1) that the evidence was insufficient to permit a finding against it, (2) that the judge’s findings were “clearly erroneous” and (3) that the judge abused his discretion in denying Central Square’s motion to amend its answer and counterclaim and to file a jury claim late.
1. Central Square’s initial claim of insufficiency of the evidence is that the Chamber failed to prove two essential elements in presenting its case in chief; namely, that Central Square had occupied the premises in violation of Avon’s Lease and that the Chamber had not given its consent to such occupation. First, Central Square failed to preserve the issue by filing either a Mass. R. Civ. R, Rule 64A(b) request for ruling of law as to the insufficiency of the evidence, or a Mass. R. Civ. R, Rule 41 (b) (2) motion for involuntary dismissal, and is thus not entitled to appellate consideration of the issue. Worcester County Nat’l Bank v. Brogna, 386 Mass. 1002, 1002-1003 (1982); Macone Bros., Inc. v. Strauss, 1997 Mass. App. Div. 95, 96. Second, it is clear from the record that the testimony of the Chamber’s president, although spare, was sufficient to establish both points.
Third, Central Square not only failed to file a Rule 41(b) (2) motion at the close of the Chamber’s case, but also proceeded to present its own evidence, thereby running the risk that it would supplement or fill in any gaps in the Chamber’s evidence. This is precisely what occurred as Central Square’s evidence included testimony by Segal that Central Square had in fact moved into the premises on May 1, 1997 without any consent from the Chamber other than Barren’s April 15,1997 letter of intent. Even a defendant who files a Rule 41 (b (2) motion at the close of the plaintiff’s case waives that motion if he then goes forward with his own evidence, just as he would be viewed as having waived a Mass. R Civ. R, Rule 50(a) motion for a directed verdict. J.W. SMITH & H.B. ZOBEL, RULES PRACTICE §41.10 at 60 (1977), citing A & N Club v. Great American Ins. Co., 404 F.2d 100,103-104 (6th Cir. 1968).
2. Central Square’s second charge of error is in the trial judge’s refusal to make the findings of fact sought in four of its requests for findings.[4] Request number 12 sought a finding that Barrell had “apparent and actual authority to act on behalf of [the Chamber].” Numbers 14,15 and 16 sought requested findings to the effect that the Chamber gave a “bona fide written consent” to the subletting, revoked it “in an unreasonable matter” and, having thus induced Avon and Central Square to act to their detriment, is “equitably estopped.”
A District Court judge is ordinarily not required to make written findings of fact in a nonjury civil case, or to respond to a party’s requests for such findings. Mass. R. Civ. R, Rule 52(c). See McGovern v. Hannaford, 348 Mass. 771 (1964); Emerald Excavating Co. v. Amelia, 1998 Mass. App. Div. 60, 61. The denial of a request for a finding does not constitute an affirmative finding to the contrary, and such denial *30 will generally not be reviewed. Huikari v. Eastman, 362 Mass. 867 (1972); Stella v. Curtis, 348 Mass. 458, 461 (1965). There is no error in the denial of a request for a finding of fact not required by the evidence. Mastercraft Wayside Furn. Co. v. Sightmaster Corp., 332 Mass. 383, 387-388 (1955); Perry v. Hanover, 314 Mass. 167, 169-179 (1943); Kovacev v. Medford, 1995 Mass. App. Div. 77, 79.
As to the question of Barren’s “apparent and actual authority,” there was ample evidence in the record to support a finding that Barrell had apparent authority to act for the Chamber. There was no evidence, however, which required, or even suggested, a finding that he was authorized to consent to the sublease without the approval of the Chamber’s Finance Committee.
Moreover, the issue of Barrell’s agency is not dispositive. Even assuming that he was authorized to approve subleases, the fact remains that Central Square did not satisfy the terms of the conditional consent given by the Chamber. In arguing that the trial judge erred in finding either that no consent was given or that the Chamber properly withdrew its consent, Central Square relies exclusively, and mistakenly, on the first sentence of Barrell’s April 15th letter (“The Chamber agrees that it will consent to Avon subletting the space that Avon now occupies to David Segal and Central Square Insurance Agency.”). Central Square virtually ignores, however, the second sentence (“The Chamber understands that David Segal will sign all agreements both Corporately and Individually’) and the last sentence of the letter (“In the event an agreement is not in place by April 30,1997 this letter of intent will terminate.”). Whether the letter was a “letter of intent” to give consent, as it is self-defined, or the consent itself, is immaterial because it was expressly and unequivocally conditional. To obtain the benefit of the April 15th letter, Central Square was required to comply with its conditions. It failed to do so.
Pursuant to the Statute of Frauds, the sublease, as a lease for a term of years, would not have been enforceable by the Chamber unless it were in written form signed by both of the parties to be charged. G.L.c. 183, §3. No such writing was signed by April 30,1997, as the last sentence of Barrell’s April 15th letter appears to require. Moreover, a promise by Segal to personally guarantee Central Square’s obligations would also have had to be in writing as a promise “to answer for the debt of another.” Id. There was no such written guaranty by April 30,1997, nor was one executed on May 9,1997 or September 30,1997. Indeed, none has been executed to this day.[5]
It may be that a court, as Central Square argues, could have held Segal’s letter of April 18, coupled with Barrell’s letter of April 15, to constitute a sufficient memorandum of guaranty to satisfy the Statute of Frauds. Lee v. Butler, 167 Mass. 426 (1897). But see Arcade Malleable Iron Co. v. Jenks, 229 Mass. 95 (1918). The Chamber was not obliged, however, to accept Segal's ambiguous expression “I feel we are all in agreement” in lieu of his individual signature, as required by the letter of intent, and a clear and simple statement of guaranty to avoid the prospect of litigation which so often arises in these circumstances.[6]
It may be noted that while the conditions imposed by the Chamber appear entirely reasonable, there was no requirement that they be so, or even that the Chamber act reasonably in denying consent altogether. 21 Merchants Row Corp. v. *31 Merchants Row, Inc., 412 Mass. 204, 206 (1992). The Chamber was not, therefore, obligated to justify in this action its insistence of Segal’s personal guaranty as a condition of the sublease. There was, in any event, evidence of Central Square’s request that the Chamber not contact its prior landlord, the judgment for possession against Central Square at its prior location, and the Chamber’s stated concerns about Segal’s business practices. The judge may well have found that the Chamber reasonably believed that Segal was evading a personal guaranty and that Central Square, having never performed the conditions of the April 15th letter, could not claim its benefit.
3. Central Square has also appealed the judge’s “denial” of its motion to amend its answer and counterclaim and file a jury claim late. This motion, it may be recalled, was made on the day of trial. The judge did not, however, deny Central Square’s motion. Instead, he offered to allow it on the condition that Central Square reimburse the Chamber for the costs and counsel fees attendant to the necessary continuance. Central Square’s counsel consulted with his client, and elected to proceed on the original pleadings.
Moreover, the judge would have been well within his discretion to have denied the motion to amend. We are mindful that “[ljeave [to amend] shall be freely given.” Mass. R. Civ. R, Rule 15(a). However, an amendment which is proposed on the day of trial and which would thus necessitate a continuance may be denied in the judge’s discretion. DiVenuti v. Reardon, 37 Mass. App. Ct. 73, 77-78 (1994). This is particularly so in a summary process action.
[T]he liberal attitude toward amendment of pleadings is tempered by the explicit goal stated in Uniform Summary Process Rule 1 (1980) that the summary process'procedure shall “secure the just, speedy, and inexpensive determination of every summary process action.” The Commentary to Rule 1 emphasizes that “time is of the essence” in eviction cases because “real estate constitutes unique property and that... time lost in regaining it from a party in illegal possession can represent an irreplaceable loss to the owner.”
Hodge v. Klug, 33 Mass. App. Ct. 746, 755 (1992).
In any event, as our discussion in the previous section of this opinion reflects, the denial of the motion did not prevent the dispositive issue of the Chamber’s consent from being fully litigated.
4. The colloquy between Central Square’s counsel and the judge concerning the proposed amendment lends itself to the interpretation that Central Square was primarily interested in the late filing of a jury claim. Civil actions, including summary process actions, in which a timely jury demand is made may be tried before a jury of six in Middlesex and Norfolk Counties pursuant to St. 1996, c. 358, as amended by St. 1998, c. 157. Rule 8 of the Uniform Summary Process Rules provides:
The provisions of Mass. R. Civ. P. 38 shall apply insofar as jury trial is available in the court where the action is pending, provided that: (1) in cases commenced in a court where jury trial is available, a demand for jury trial shall be filed with the court no later than the date on which the defendant’s answer is due; ...
Rule 38(d), in turn, provides that the failure of a party to file a timely jury demand “constitutes a waiver by him of trial by jury.” See Arthur D. Little, Inc. v. Commissioner of Health & Hosp. of Cambridge, 395 Mass. 535, 544-545 (1985). The requirement that the right to a jury trial be claimed promptly reflects a longstanding policy in this Commonwealth. Dole v. Woolredge, 142 Mass. 161 (1886). The denial by a judge of a motion to file a late jury claim will not be disturbed. Green *32 berg v. Greenberg, 10 Mass. App. Ct. 827 (1980); Lowell Bank & Trust Co. v. D’Annolfo Const. Co., Inc., 6 Mass. App. Ct. 825 (1978). Given the requirement for “a just, speedy, and inexpensive determination” of summary process actions, Hodge v. Klug, supra at 755, a late jury claim should rarely, if ever, be allowed in such actions.
Accordingly, the trial court’s judgment for the Chamber is affirmed. Appeal dismissed.
So ordered.

 Paragraph 28 stated: “Subletting. Number of Occupants: The Lessee shall not assign or underlet any part or the whole of the leased premises, nor shall permit the leased premises to be occupied for a period longer than a temporary visit by anyone EXCEPT THE INDIVIDUAL SPECIFICALLY NAMED IN THE FIRST PARAGRAPH OF THIS LEASE, and during the term of this Lease or any extension or renewal thereof without first obtaining on each occasion the assent in writing of the Lessor.”

 The letter provided that occupancy would commence on May 1,1997, and that the lease could be extended to Segal for an additional three years, but would have to include a “CPI clause” with a 1997 base year. The letter farther stated that the Chamber would not upgrade the space, and that Avon would remain liable for any failure of the assignee to perform, would have to bring its tax escalator obligations up to date by April 30 and would be required to pay all costs of the transaction, including the Chamber’s legal expenses.

 The particular requests were submitted “Proposed Conclusions,” but are in substance requests for factual findings. See Lenco Pro, Inc. v. Guerin, 1998 Mass. App. Div. 10, 12 and cases cited.

 Central Square occupies the Premises, paying use and occupancy, pending this appeal.

 See Merrimack Valley Nat’l Bank v. Baird, 372 Mass. 721 (1977); Philip Morris, Inc. v. Litel, 30 Mass. App. Ct. 936 (1991); Capitol Bank & Trust Co. v. Richman, 19 Mass. App. Ct. 515 (1985); Boston Globe Newspaper v. Folktree Concertmakers, Inc., 1998 Mass. App. Div. 206; Chapian v. Car Wash Systems, Inc., 1995 Mass. App. Div. 167; Orix Credit Alliance, Inc. v. The Brandon Co., 1993 Mass. App. Div. 69; NRF Distrib., Inc. v. U.S. Carpet, Inc., 1990 Mass. App. Div. 215.