Greco, J.
This is an action in contract to recover the balance owed on a promissory note signed by the defendant. Although the note was secured by a second mortgage on real estate located in New Hampshire, the proceeds of a foreclosure sale were insufficient to satisfy even the first mortgage, held by Dime Real Estate Services (“Dime”)- In her defense, the defendant asserted that she was not personally liable on the note she signed because she was acting at all times as the disclosed agent of her nephew. Further, she argued that even if she were deemed a principal to the note, the note was unenforceable on the grounds of illegality. After trial, judgment was entered for the defendant, and the plaintiff filed this Dist./ Mun. Cts. R. A. D. A., Rule 8C, appeal.[1]
The statement of evidence filed pursuant to Rule 8C(e), which essentially mirrors the extensive findings of fact made by the trial judge, indicates the following. As part of the purchase of a three family house in New Ipswich, New Hampshire, defendant Rita Cardinal signed a promissory note in her own name payable to plaintiff Paul Fillion (“Fillion”) in the amount of $90,000.00. The note was secured by a second mortgage on the New Hampshire property. The defendant’s nephew, Derek Cardinal (“Derek”), was a friend and co-worker of Fillion’s. It was Derek who first approached Fillion about purchasing the property. Derek was in the process of obtaining a divorce, and initially proposed that his father (who had never visited the property) would purchase it. When that plan failed, Derek next suggested that his aunt, the defendant, would be the buyer. While Fillion had previously met Rita Cardinal, he never discussed the transaction directly with her at any time. Derek negotiated the financial terms of the promissory note and made all the necessary arrangements, not only for the signing of the note and execution of the second mortgage, but also for the execution of the first mortgage to Dime and the transfer of title to the property. Defendant Rita Cardinal did not even attend the latter events. In an effort to obtain financing, representations were made to Dime which both Fillion and Derek knew to be false. Specifically, Dime was led to believe that a down payment of $90,000.00 had been made when, in reality, Fillion had taken back a second mortgage in that amount. Derek instructed his aunt, the defendant, to sign all the relevant documents, including those containing the misrepresentations. Derek testified at trial that she did so as his agent and that he considered himself the owner of the real estate.
After the transfer of title, Derek negotiated with Fillion for extensions of time to *285 make payments. Rita Cardinal was not notified of, and did not agree to, those extensions. Only one payment was ever made on the note, and that was by Derek. Rita never lived at the property, but continued to live in Medford, Massachusetts. In fact, she never visited the property before or after the closing. After the purchase, Derek notified the tenants that he was the landlord; he collected the rents and insured the property. Approximately a year later, Derek made an unsuccessful attempt to sell it.
As part of his divorce, Derek was awarded temporary use of the property, and was made responsible “for the mortgage, real estate taxes, insurance and maintenance.” However, Rita Cardinal claimed the mortgage interest, real estate tax and depreciation deductions for the property for three years on her personal income tax returns.
In finding for the defendant, the trial judge concluded that Fillion knew that the property was being purchased for Derek, that the defendant signed the necessary documents as directed by Derek and “as [Fillion] looked on,” that Fillion never believed that the defendant was buying the property, and that the defendant was not the principal to this transaction, but signed as her nephew’s agent. The trial judge also allowed all but two of Fillion’s requests for rulings of law. She denied a requested ruling that any alleged illegality with respect to the purchase of the property or the first mortgage was not material to, and did not bar enforcement of, the note between Fillion and the defendant. The judge also denied a request that the defendant would receive a windfall if the note to Fillion was held unenforceable on the grounds of illegality.
On this appeal, Fillion argues that (1) his requested rulings which were allowed should have dictated a judgment in his favor, (2) the denial of two of his requested rulings was error because the note was not unenforceable due to illegality and (3) the trial judge’s finding that the defendant acted solely as her nephew’s agent was not supported by the evidence.
1. The trial judge found for the defendant even though she allowed Fillion’s requested rulings that the defendant was indebted to him and that the defendant’s nephew, Derek, was not a principal to the note. The court also allowed requests for rulings that extrinsic evidence is inadmissible to clarify an unambiguous writing and that a written agreement will prevail over any inconsistent prior or contemporaneous agreements. However, “the proper remedy for an actual inconsistency between findings and rulings is a Mass. R. Civ. P., Rule 59, motion for a new trial or to correct the inconsistency by altering or amending the findings. Cook v. Kozlowski, 351 Mass. 708 (1967); Fine Home Builders, Inc. v. Humenn, 1998 Mass. App. Div. 90, 92 and cases cited.” Keene v. Moylan, 1998 Mass. App. Div. 262, 263 n.3. Fillion failed to file such a motion in this case.
In any event, the alleged inconsistencies were rendered inconsequential when the trial court, although not required to do so, made extensive and detailed findings of fact which made the basis of the court’s rulings abundantly clear. See Kovacev v. Medford, 1995 Mass. App. Div. 77, 79. As noted above, the judge expressly found that “Rita Cardinal was not the principal but acted for her nephew, Derek Cardinal,” and set forth her reasons for so concluding. Notwithstanding the judge’s rulings on the evidentiary issues, that reasoning indicated that she was relying on extrinsic evidence. As discussed below, it was proper for her to do so in the circumstances of this case.
2. Both parties addressed in their briefs the issue of whether the alleged misrepresentations to the first mortgagee, Dime, rendered the note unenforceable as illegal. Illegality is irrelevant, however, as an issue on this appeal. As it was not the basis of the trial judge’s ultimate finding for the defendant, we need not address it. To be sure, the judge alluded to the alleged illegality, noting that “Fillion’s level of complicity and his direct and active part in the planned execution and cover up *286 make him more like a co-conspirator in perpetration of a fraud.” That discussion related, however, to Fillion’s knowledge that Derek, and not his aunt, was the true party in interest. In other words, Fillion was an active participant in the scheme to make it appear that Rita Cardinal was the principal, as opposed to merely her nephew’s agent. Thus the actual principal was effectively disclosed. The fact that illegality was not the basis of the trial court judgment is further evidenced by the lack of any discussion of the factors outlined in Starr v. J. Abrams Construc. Co., 16 Mass. App. Ct. 74, 78-79 (1983) even though this Division specifically referred to Starr in the prior appeal of this case and the trial judge indicated that she was aware of the same. In this context, Fillion’s requested rulings on the issue of illegality (Nos. 15 and 17) were properly denied because they were rendered immaterial by the court’s decision of this matter on agency principles. See Jacquith v. Morrill, 204 Mass. 181, 188 (1910).
3. Fillion’s remaining contention on this appeal is that the evidence did not support the trial court’s finding that the defendant could not be bound as a principal to the note. Fillion failed, however, to preserve this issue for appeal by requesting a ruling of law that a finding in his favor was required or a ruling that a finding for the defendant was not warranted. See Mass. R. Civ. P., Rule 64A(b) (1) and (b) (2). See Cambridge Chamber of Commerce v. Central Sq. Ins. Agency, Inc., 1999 Mass. App. Div. 27, 29; Lindquist v. Garrett Auctioneers, Inc., 1999 Mass. App. Div. 107, 108. However, where the trial judge elects, as in this case, to make written findings of fact, “a narrow window of appellate opportunity is created for a party who has failed to preserve his right to appellate review. Consideration may be given on appeal to the question of whether the trial court’s findings of fact are so devoid of support that they are ‘clearly erroneous.’” Mark Moore Homes, Inc. v. Tarvezian, 1998 Mass. App. Div. 171, 172. In undertaking such a review, an appellate court accords the findings considerable deference “because of the trial judge’s superior position to assess the weight, and particularly the credibility, of oral testimony.” Macone Bros., Inc. v. Strauss, 1997 Mass. App. Div. 95, 96. “If the trial judge makes one of several possible choices of what facts are supported by the evidence, the judge’s choice is not clearly erroneous.” W. Oliver Tripp Co. v. American Hoechst Corp., 34 Mass. App. Ct. 744, 751 (1993). A trial court’s findings will not be disturbed unless “on the entire evidence,” the appellate court is “left with the firm conviction that a mistake has been committed.” G.E.B. v. S.R.W., 422 Mass. 158, 172 (1996); Rood v. Newberg, 48 Mass. App. Ct. 185, 190-191 (1999). See also First Penn. Mortg. Trust v. Dorchester Sav. Bank, 395 Mass. 614, 621 (1985). We have no such firm conviction in this case. To the contrary, the trial court’s conclusion that Rita Cardinal was not a principal to the note was clearly reasonable.[2]
As noted, the trial judge found that defendant Rita Cardinal was not the principal on the note in question, but signed it as her nephew’s agent. It is axiomatic that “[ujnless otherwise agreed, a person making or purporting to make a contract *287 with another as agent for a disclosed principal does not become a party to the contract.” RESTATEMENT (SECOND) OF AGENCY §320 (1958). However, to avoid personal liability on this note, Rita Cardinal was obligated “to disclose not only that [she was] acting in a representative capacity, but also the identity of [her] principal.” Atlantic Salmon A/S v. Curran, 32 Mass. App. Ct. 488, 492 (1992). Moreover, it was not enough that Fillion had “the means of ascertaining” that Derek Cardinal was the principal; Rita had to “either bring to [Fillion] actual knowledge or, what is the same thing, that which to a reasonable man is equivalent to knowledge” of the principal’s identity, or she would be bound. 1 MECHEM ON AGENCY §1413 (2d ed. 1914), quoted in Atlantic Salmon A/S, supra at 493. In the circumstances of this case, the evidence fully warranted a finding that Fillion had actual knowledge that Derek was the principal. Fillion cannot be heard to complain that Rita Cardinal may not have actually identified the principal when the evidence established that he knew at all times that Derek was to be the buyer of his property and that Rita’s participation as Derek’s straw was the means by which he would be able to sell the property.
Despite her allowance of Fillion’s requested ruling that parol evidence was inadmissible, the trial judge obviously looked beyond the four corners of the promissory note in determining that Rita Cardinal acted only as an agent. It was not error to do so. While it “is familiar law that evidence is not admissible to vary, contradict or add to the terms of a contract reduced to writing by the parties,” Western Newspaper Union v. Dittemore, 264 Mass. 74, 77 (1928),
evidence of the contract negotiations and the circumstances of its execution are always admissible to show whether the contract was intended by the parties as an integrated (i.e., final) expression of the terms of their agreement or to show the existence of any uncertainties in the contract’s application.
Fred S. James & Co. v. Hoffman, 24 Mass. App. Ct. 160, 163 (1987), quoted in Charles River Mortgage Co. v. The Baptist Homes of Mass., Inc., 36 Mass. App. Ct. 277, 279 (1994). “In some circumstances an oral agreement modifying the terms of a later-signed written agreement goes directly to the question whether the written document is an integrated statement of the entire agreement of the parties.” Schinkel v. Maxi-Holding, Inc., 30 Mass. App. Ct. 41, 46 (1991). See also McTigue v. Ryan, 286 Mass. 515, 516 (1934) (parole evidence admissible to show that father purchased automobile as agent for an undisclosed principal; to wit, his son). But compare Norfolk County Trust Co. v. Green, 304 Mass. 406, 408 (1939). Here, the evidence would have warranted a finding that the three participants in this arrangement (Fillion, Derek and Rita Cardinal) had an oral agreement as to their true roles in the transaction; that the prior oral agreement was still operative when Rita signed the note; that the note did not, therefore, fully reflect the agreement of the parties; and that Fillion’s subsequent conduct in granting extensions to Derek and in accepting payment from him further ratified the prior oral agreement. See Schinkel v. Maxi-Holding, Inc., supra at 41. That Rita Cardinal may have enjoyed some tax benefit could have been viewed by the trial judge as an inconsequential matter between family members with no financial impact on Fillion.
Moreover, as noted in RESTATEMENT (SECOND) OF CONTRACTS §214 (1981), cited in McEvoy Travel Bureau, Inc. v. Norton Co., 408 Mass. 704, 711 n.5 (1990), “[ajgreements and negotiations prior to ... the adoption of a writing are admissible in evidence to establish ... fraud or other invalidating cause.” Comment C to §214 states:
What appears to be a complete and binding integrated agreement may be a forgery, a joke, a sham, or an agreement without consideration or it *288 may be voidable for fraud, duress, mistake or the like, or it may be illegal. Such invalidating causes need not and commonly do not appear on the face of the writing.
See also McEvoy Travel Bureau, Inc., supra (“It is well established that the parol evidence rule does not apply when the complaining party alleges fraud in the inducement.”). Fillion could not “by written words prevent the law from inquiry into, and granting redress for, fraud which enters into the very substance of the contract itself.” Bates v. Southgate, 308 Mass. 170, 176 (1941), quoting from Butler v. Prussian, 252 Mass. 265, 268 (1925). Thus it was permissible for the trial judge to consider evidence outside of the written terms of the note. Her finding that Fil-lion was a participant in a fraudulent transaction was certainly not “clearly erroneous.” It could be inferred from the evidence that Fillion and Derek, in their effort to complete the sale, deceived the first mortgagee, Dime. It could also be inferred that Fillion knew full well the limited nature of Rita Cardinal’s role, and that he agreed to the “sham” arrangement whereby she merely signed the necessary documents on her nephew’s behalf without incurring any obligation. To now hold Rita Cardinal liable as a principal would mask the true nature of this arrangement and her actual role in it, and make her a victim of this fraud as well.[3]
The trial court’s judgment is affirmed. Appeal dismissed.
So ordered.

 This matter is before us for a second time. The case had been previously tried before a different judge who had also entered judgment for the defendant. That judgment, however, was vacated by this Division and the case was returned to the trial court for a new trial. See Fillion v. Cardinal, 1994 Mass. App. Div. 49.

 We have reviewed the court’s findings in the context of applicable Massachusetts law. It may be noted that in their Rule 8C (e) “Statement of the Evidence as Settled and Approved,” the parties agreed “that New Hampshire substantive law applies [to this case] and relevant New Hampshire law was submitted to the [trial] court.” However, no New Hampshire law is included in the record appendix. Further, with the exception of a passing reference by the plaintiff to a New Hampshire statute defining what a mortgage is, neither party has cited any New Hampshire law in their briefs, choosing instead to discuss Massachusetts law. “In these circumstances we may assume that the common law of [New Hampshire] is the same as ours and we are not obliged under G.L. (Ter. Ed.) c. 233, §70 to make a search of that law.” Commercial Credit Corp. v. Stan Cross Buick, Inc., 343 Mass. 622, 625 (1962). See also LIACOS, HANDBOOK OF MASSACHUSETTS EVIDENCE, §2.8.1 (6th ed. 1994).

 It is not the case, as also argued by Fillion, that any authorization to the defendant to act as agent was required to be notarized and recorded. See Malagan v. Rose, 262 Mass. 555, 566-567 (1928), indicating that a power of attorney authorizing a husband to mortgage his wife’s realty did not have to be acknowledged and recorded to be effective.