Koenigs, J.
Adolph Dugas appeals from a finding that he is individually liable as guarantor for the debt of a corporation sued for unpaid fuel deliveries by Edward A. Flynn, Jr., d/b/a Flynn’s Truck Stop. The trial court based this finding on a guaranty contract form that Mr. Dugas signed in his corporate capacity after striking out the preprinted words “Personally and Individually” [sic]. The import of this form, and the circumstances of its signing, are the central issues in this appeal.
1. The sufficiency of the evidence.
Mr. Dugas contends, in essence, that the evidence, comprising the testimony of Flynn’s general manager, Peter Ferraro, and the guaranty form, was not a sufficient basis for finding him individually liable for the corporation’s debts to Flynn.
a. The procedural issue. Although the defendant did not request a ruling of law regarding the sufficiency of the evidence in compliance with the requirements of Mass. R. Civ. P., Rule 64A (b)(2),[1] the issue is capable of resolution because the trial judge made rule 52(c)-compliant findings;[2] the trial was brief, with only one •witness and one exhibit (the contract form); the entire trial transcript is 22 pages, and the evidence presents a single, simple issue: Did the defendant, by amending the plaintiff’s form and then signing it, bind himself in his individual capacity to pay the corporation’s debts to the plaintiff?
b. The evidence. Mr. Dugas was the chairman and chief operating officer of Automated Products of America, Inc. (“the corporation”). On behalf of the corporation, Mr. Dugas went to Flynn’s offices and met with Flynn’s general manager, Peter Ferraro, to arrange for fuel deliveries to the corporation.
Mr. Dugas had been provided a combined credit application and payment guaranty form that, as Mr. Ferraro testified, “we have people sign to set up an account to guarantee the account individually.” There was no evidence that the form’s purpose, i.e., obtaining an individual guaranty for corporate debt as a prerequisite to *80 opening an account, was ever discussed with Mr. Dugas. The form recites no requirement that an individual guaranty be signed as a condition to obtaining a corporate account with Flynn. During the meeting, Mr. Dugas gave the form, which he had signed in his corporate capacity, to Mr. Ferraro.
One side of the form is entitled “Flynn’s Truck Plaza - Credit Application.” Below the title, in the spaces provided, bank and businesses references for the corporation are supplied in handwriting.
The other side of the form is entitled “Continuing Individual Guaranty.”[3] There are several paragraphs describing the promise of the “Undersigned” to “guaranty” payments of the “Debtor.” The “Debtor” is described by the corporation’s name and address; the “Undersigned” is “Adolph Dugas,” but the space provided for the residential address of the “Undersigned” was left blank. Although the preprinted words “individual” and “personal” appear in the title and under the signature line, they are not used in the body of the document. The word “guaranty” repeatedly appears in the term language, but is never modified by the words “personally” or “individually.”
At the signature line, Mr. Dugas crossed out the preprinted words “Personally and Individually” with two strokes, and wrote “Automated Products of America, Inc.” above his signature, to which he added the designation “Chmn/CEO” thus:
Automated Products of America, Inc.
Signed: [S/]A Dugas Chmn/C.E.O.
Personally-and-Individually
Mr. Ferraro looked at this signature and asked Mr. Dugas if that were “his signature.”[4] Mr. Ferraro did not mention the terms “individual” or “personal.”[5] Mr. Dugas said it was. The plaintiff’s agent saw that the defendant had struck out the terms “Personally and Individually,” and said nothing to the defendant about the changes. Mr. Ferraro, believing that the changes had no significance, accepted the form with those changes, and, as the plaintiff’s agent, signed his name on the line designated “Witness.”
Flynn thereafter began fuel deliveries to the corporation, which later went bankrupt.
c. Discussion. There was insufficient evidence to find that a contract was formed between Mr. Dugas and Flynn regarding payment for the fuel deliveries. Clearly, Flynn intended that Dugas would become individually liable for the fuel deliveries, if the corporation failed to pay. Mr. Dugas’ intention is clear as well: by twice striking out the words “Personally and Individually,” placing the corporation’s name above his own, signing in his corporate capacity, and refusing to provide his own residential address, Mr. Dugas rejected those proposed terms.
Flynn argues that Mr. Dugas is bound, regardless how he signed the contract, by the rest of the preprinted language on the form, which he did not cross out or alter. The contract form does not have a life of its own; it either reflects a meeting of the minds of the parties as to the essential element of a contract, or it does not.
Flynn’s preprinted form is full of language commonly used by lawyers to describe a promise to be liable for the debts of a third party; the word “guaranty” *81 appears throughout the form. However, in the real word, ordinary people often use the word “guaranty” synonymously with “promise.” See The Ceco Corporation v. Bennett, 355 Mass. 791 (1969) (rescript), where the term “guaranty,” construed in context, was found not to impose liability for the debts of another.
Flynn’s form contract does not state, in plain English, that the “Undersigned” is promising to take on personal and individual liability for paying the debts of another. Flynn’s failure to cross out “Individual” in the heading, or change other legalistic language in the form (e.g. “the liability of the Undersigned shall be primary and not secondary”) is insufficient to establish that he intended to be individually liable. The signature makes clear that Mr. Dugas intended to act only on behalf of the corporation, not individually. See Marshall v. Stratus Pharmaceuticals, Inc., 51 Mass. App. Ct. 667 (2001).
The instrument relied on must be found to state the essential terms of a contract, by which both parties intended to be bound. George W. Wilcox, Inc. v. Shell Eastern Petroleum Products, 283 Mass. 383 (1933). Flynn’s form, with the critical changes made by Mr. Dugas, does not manifest a meeting of the minds, and cannot be construed as an enforceable contract. See Hunneman Real Estate Corp. v. Norwood Realty, Inc., 54 Mass. App. Ct. 416, 421 (2002); ALPERIN AND SHUBOW, SUMMARY OF BASIC LAW, §7.11. It is not a question, therefore, of construing the ambiguous terms of a contract; no contract was ever formed.[6]
2. Remaining issues. In light of this holding, it is unnecessary to reach the other issues raised on appeal.
Judgment reversed; judgment to enter for the defendant.

 Rule 64A(b)(2) specifically provides: “In District Court proceedings, to obtain a ruling that the evidence is insufficient as a matter of law to permit a general finding in the opposing party’s favor, the requesting parly shall file a written request for such ruling substantially in the following language: The evidence does not warrant a finding for [opponent party] and therefore a finding for [requestor] is required as a matter of law.’”

 Even though the trial judge did not specifically state that he was making findings of fact under Mass. R. Civ. P., Rule 52 (c), we find that his memorandum is just sufficient, under the circumstances of this case, to meet the requirements of that rule. However, “[t]o avoid any confusion when following this practice, we suggest that judges specifically state whether they are or are not making findings of fact under rule 52(c).” Stigum v. Skloff, 433 Mass. 1011 (rescript) (2001).

 The form did not memorialize the terms of the fuel delivery agreement between the plaintiff and Automated, although the existence of an agreement is noted on the side of the form entitled “Continuing Individual Guaranty.”

 Apparently, Mr. Ferraro did not see Mr. Dugas sign the form.

 A careful reading of the transcript, which was not available to the trial judge when he wrote his findings expanding on this point, shows that Mr. Ferraro asked Mr. Dugas only about “his signature.”

 Our colleagues in other Appellate Divisions have found otherwise in similar cases, which may be distinguished on their facts. However, we read Merrimack Valley Nat. Bank v. Baird, 372 Mass. 721 (1977), relied upon by our colleagues in those cases, as interpreting an existing contract, rather than determining whether a contract existed at all, which is the issue here. See Boston Globe Newspaper Co. Inc. v. Folktree Concertmakers, Inc., 1998 Mass. App. Div. 206, and NRF Distributors, Inc. v. U.S. Carpet, Inc., 1990 Mass. App. Div. 215.